RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 12a0420p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

Nos. 09-1852/1860

BRYAN ROSS (09-1852) and
ROBERT BURSTON (09-1860),

*Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 07-20513—David M. Lawson, District Judge.

Argued: October 6, 2011

Decided and Filed:  December 31, 2012

Before:  BOGGS and STRANCH, Circuit Judges; CARR, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Patricia Annette Streeter, Ann Arbor, Michigan, for Appellant in 09-1852. William J. Winters III, Livonia, Michigan, for Appellant in 09-1860.  Craig A. Weier, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee in 09-1852 and 09-1860.  **ON BRIEF:**  Patricia Annette Streeter, Ann Arbor, Michigan, for Appellant in 09-1852.  William J. Winters III, Livonia, Michigan, for Appellant in 09-1860.  Craig A. Weier, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee in 09-1852 and 09-1860.

STRANCH, J., delivered the opinion of the court in which CARR, D. J., joined, and BOGGS, J., joined in part.  BOGGS, J. (pp. 36–38), delivered a separate opinion concurring in part and dissenting in part from Section II.A.2 of the majority opinion.

_____

[*]The Honorable James Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

————————

**OPINION**

————————

JANE B. STRANCH, Circuit Judge.  In this joint direct criminal appeal, Bryan Ross and Robert Burston raise several challenges to their convictions on multiple charges relating to a counterfeit-check scheme.  The prosecution alleged that Ross orchestrated a conspiracy to purchase vehicles with counterfeit checks and then quickly resell the vehicles.  Burston was one of several alleged co-conspirators who carried out the plan, the rest of whom accepted plea agreements which required their testimony against Ross and Burston.  Ross presents ten issues for appeal and Burston six, four of which overlap, for a total of twelve types of claims.  For the reasons stated below, we **AFFIRM** Burston's conviction.  We **REMAND** for an evidentiary hearing to determine whether Ross was unconstitutionally deprived of representation during his pre-trial competency hearing.  If the district court determines that he was, Ross's conviction and sentence are vacated; if not, both are affirmed.

### I.  BACKGROUND

On October 16, 2007, Ross and Burston were among five defendants named in an indictment which listed one count of engaging in a conspiracy to utter counterfeit securities and seven substantive counts related to the conspiracy.  The indictment described the conspiracy as a scheme "to obtain motor vehicles from private sellers by uttering worthless, counterfeit 'official checks,' purportedly issued by Comerica Bank . . . to the private owners of the motor vehicles" and then quickly reselling the cars.  Each defendant was named in the conspiracy count;  Ross was named in six substantive counts while Burston was named in one.  The prosecution told the jury at trial that Ross was the man who "conceived the scheme" and was "primarily responsible for orchestrating" it.  Burston was a "willing participant" who engaged in the sale and resale of several vehicles.  Before trial, Ross exhibited bizarre and paranoid behavior which led to the withdrawal of three court-appointed attorneys.  On May 13, 2008, while being represented by the third attorney, Allen Early, Ross filed a motion to waive counsel and

represent himself. On May 16, the Government filed a motion for a competency examination and hearing. The court denied both motions in an order dated June 2. At the motions hearing, the court made no finding as to Ross's ability to represent himself and denied Ross's motion solely on the ground that his indigent status would qualify him for various court services and "I am quite reluctant to authorize funds to be spent by a Defendant pro se" because of the lack of "professional oversight that is required to make sure that those funds are spent in a sensible and a legal way." The court did, however, tell Ross that it would entertain another motion to waive counsel closer to the start of trial.

With respect to the Government's competency motion, the court found that Ross's signs of delusion and paranoia and his inability to get along with his lawyers did not give reasonable cause to order a psychiatric exam at that time, but "urge[d] all Counsel, however, that if there are additional developments that cause Counsel to question the conclusions that I have just made on the record, to bring them to my attention and I will reassess at any time."

On June 10, 2008, just over one week after the denial of his original motion, Ross filed another motion "to substitute counsel until trial" which also noted Ross's continued desire to represent himself. The court denied Ross's request to be appointed a new attorney but, after inquiring into Ross's knowledge and ability to represent himself, found that Ross "knowingly and voluntarily waived his right to counsel" and appointed Early to be standby counsel.

On July 30, the Government filed a second motion for a competency examination and hearing, which was granted on August 5. Ross was not reappointed full-time counsel in advance of the hearing. On October 29, the court held the competency hearing based on the report of a court-appointed psychologist and the court's own observations and found Ross to be competent to stand trial. On December 9, the court denied a motion by Ross to dismiss Early from further involvement in the case but granted Early's oral motion at the hearing to withdraw, finding that Ross "had poisoned

the relationship" with "unsupported allegations" and "abusive behavior." The following day, the court appointed a new attorney, Richard Korn, to serve as standby counsel.

After an eight-day joint trial beginning on February 4, 2009, Ross was convicted of conspiracy and five of the six substantive counts against him. He was sentenced to sixty months' imprisonment for the conspiracy count and seventy-eight months for each substantive count, all to be served concurrently. Burston was convicted of conspiracy and acquitted of the substantive count. He was sentenced to thirty months in prison. Each filed a timely notice of appeal.

## II.  DISCUSSION

### A.  Competency to waive and proceed without counsel

Ross's first claim is that the trial court erred in permitting him to waive representation of counsel and to represent himself because he was not competent to do either. Ross also raises a related claim that the trial court should have reappointed counsel for his competency hearing. Although the court did not err in allowing the initial waiver of counsel, we hold that the court did commit error when, upon granting a competency hearing, it failed to reappoint full-time counsel to represent Ross until the issue of competency was resolved. Whether Ross was unconstitutionally deprived of counsel at that hearing depends on the extent to which his standby counsel conducted an adequate investigation and subjected evidence of competency to meaningful adversarial testing, a determination which requires an evidentiary hearing.

#### 1.  Waiver of counsel determination

The Sixth Amendment guarantees criminal defendants both the right to trial counsel and the right to proceed without counsel. *Faretta v. California*, 422 U.S. 806, 834 (1975). However, "the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 162 (2000). "While the Constitution does not force a lawyer upon a defendant, it does require that any waiver of the right to

counsel be knowing, voluntary, and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 87-88 (2004) (citations and internal quotation marks omitted).

This Court has not clearly identified the appropriate standard of review for a trial court's decision to allow waiver of counsel. *See United States v. Williams*, 641 F.3d 758, 766 (6th Cir. 2011). Some prior decisions apply a de novo review while others review for plain error. *See United States v. McBride*, 362 F.3d 360, 365-66 (6th Cir. 2004) (discussing the conflicting standards of review applied in this Circuit). *McBride* and other cases left this question unresolved because each concluded that waiver was proper in that case under either standard. We also decline to resolve the question because it does not appear to be dispositive in this case and the parties have not explored the distinction.

When an accused wishes to represent himself, the district court "must ask the defendant a series of questions drawn from, or substantially similar to, the model inquiry set forth in the *Bench Book for United States District Judges*." *Williams*, 641 F.3d at 766 (internal quotation marks omitted). The model inquiry comprises thirteen questions about the defendant's familiarity with the law, the legal system, and the charges against him. *Id.* at 767. Substantial compliance with this series of questions is sufficient. *United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2004). The inquiry must be followed by a strong admonishment that the court recommends against the defendant trying to represent himself. *Williams*, 641 F.3d at 767. Here, the record shows that the district court conducted the proper colloquy, admonishments, and findings before allowing Ross to waive counsel. Indeed, the court performed the required steps on multiple occasions throughout the course of the pre-trial proceedings, in particular at the May 30, 2008 hearing in which the judge denied Ross's self-representation motion without prejudice and the June 16, 2008 hearing in which Ross's subsequent motion for self-representation was granted.

Even if the model inquiry is followed, the waiver of counsel must also be made "knowingly and intelligently." *United States v. Kidwell*, 217 F. App'x 441, 445-46 (6th Cir. 2007) (quoting *Faretta*, 422 U.S. at 835)). When there is "reason to doubt the

defendant's competence," a court should make a competency determination before finding the waiver to be valid. *United States v. Colbert*, 55 F. App'x 225, 230 (6th Cir. 2002) (citing *Godinez v. Moran*, 509 U.S. 389, 400-01, 402 n.13 (1993)). We have held that "a psychological impairment would go to the question of whether the waiver of counsel was knowing and intelligent." *Kidwell*, 217 F. App'x at 446 (quoting *United States v. McDowell*, 814 F.2d 245, 251 n.2 (6th Cir. 1987)).

This Court reviews the determination of whether there is reasonable cause to question a defendant's competence and to grant a competency hearing under an abuse of discretion standard. *United States v. Jones*, 495 F.3d 274, 277 (6th Cir. 2007). Competence itself is a question of fact which this Court reviews for clear error. *United States v. McCarty*, 628 F.3d 284, 294 n.1 (6th Cir. 2010). The district court allowed Ross to waive counsel at the June 16, 2008 hearing, finding that Ross had made the waiver "knowingly and voluntarily." Although the court did not expressly find Ross was competent to stand trial at that time, it had recently done so during the denial of the first competency hearing motion on May 30.

The record suggests there was reason to doubt Ross's competence at the time the court accepted his waiver of counsel. The prosecutor had filed the first motion for a mental competency examination of Ross just one month earlier. The motion cited Ross's paranoid pro se filings as well as allegations from the motion to withdraw of Ross's first attorney, which referenced Ross's "delusional state," "paranoid ideations," and "conspiracy theories" that the attorney and the prosecutor were "in cahoots." At the May 30 hearing on the motion, the prosecutor informed the court that "in the 20 years I have been prosecuting in this job, I have never asked the Court for a competency evaluation before." The judge also noted that Ross's filings might suggest that Ross was "delusional or believes in a conspiracy that doesn't exist or has feelings of paranoia." The prosecutor filed a second motion for a competency hearing on July 30, citing the grounds in the first motion, Ross's numerous subsequent pro se pleadings and letters to the court in which Ross continued to claim his then-standby counsel was conspiring

against him, and Ross's attempt to subpoena seventy-seven witnesses (a request considered by the prosecutor to be "foolhardy and irrational").

Notwithstanding this evidence to the contrary, however, we conclude that the court did not clearly err in finding Ross competent to waive counsel on June 16. The court conducted an appropriate colloquy and made a supported finding that Ross "knowingly and voluntarily waived his right to counsel." The court substantially complied with the model inquiry during the May 30 motion hearing on Ross's first request to waive counsel. Although the court did not ask Ross each of these questions again at the June 16 hearing on Ross's second motion, the answers to those particular questions likely would not have changed in the intervening two weeks, and the court referred to them in its findings at the latter hearing. The court also offered an appropriate warning and asked follow-up questions on the maximum penalties Ross faced as of the most recent calculations, whether Ross understood the disadvantages he faced in light of his legal inexperience, and whether his decision was voluntary. This Court has repeatedly upheld waiver of counsel determinations so long as the trial court substantially adheres to the *McDowell* model inquiry and makes a supported finding that the waiver was knowing and voluntary. *See, e.g.*, *United States v. Utrera*, 259 F. App'x 724, 728 (6th Cir. 2008); *McBride*, 362 F.3d at 366.

Notable in the court's determinations was its finding at the June waiver of counsel hearing that Ross's behavior was "simply a manifestation of a desire to delay the inevitable, and that is, a trial in this case." In *King v. Bobby*, we determined that a court was justified in allowing waiver of counsel when a defendant "was attempting to manipulate the system by first refusing to retain an attorney, then by refusing to work with his attorney." 433 F.3d 483, 493 (6th Cir. 2006); *see also United States v. Powell*, 353 F. App'x 19, 22 (7th Cir. 2009) ("[S]trategic delay weighs in favor of finding a waiver to be knowing and intelligent."). Moreover, "when a defendant waives his right to counsel through his dilatory conduct, the Constitution does not require a court to engage in an extended discussion about the repercussion of the waiver." *King*, 433 F.3d at 493 (citing *United States v. Oreye*, 263 F.3d 669, 670 (7th Cir. 2001)). This would

be a different case had the court failed to create a record clearly supporting its finding that Ross had knowingly and voluntarily waived his right to counsel. *See, e.g.*, *United States v. Herrera-Martinez*, 985 F.2d 298, 302 (6th Cir. 1993) (finding plain error when trial court failed to make proper determination of whether defendant was competent to waive counsel).

### 2.  Self-representation at competency hearing

Within Ross's claim that he should not have been permitted to proceed pro se, Ross asserts a distinct claim that the district court erred when it permitted him to represent himself at his competency hearing.  Title 18 U.S.C. § 4247(d) provides that, during a competency hearing, "the person whose mental condition is the subject of the hearing *shall* be represented by counsel."  (Emphasis added).  The statute does not state that the person merely has the "right" to counsel.  *See United States v. Franklin*, 499 F.3d 578, 583 (6th Cir. 2007) ("The term 'shall' is not permissive; it is mandatory.").  The district court committed error in failing to appoint counsel to represent Ross at the hearing.  The court also erred in failing to inform Ross of his rights to "testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the [competency] hearing." 18 U.S.C. § 4247(d). This error resulted from the court's failure to inform Ross of these rights at the hearing or to inquire whether standby counsel had done so thus denying the court the ability to ensure Ross knowingly waived those rights.

In addition to the statutory violation, Ross's Sixth Amendment right to counsel was violated when the court allowed him to proceed without counsel despite having questions about his competency.  The Government suggests the court's prior determination that Ross was competent to represent himself carried over to the competency hearing.  However, the Supreme Court has noted that a finding of competency at one point of the proceedings may be overcome later by further evidence that a defendant is not competent. *Drope v. Missouri*, 420 U.S. 162, 181 (1975). "Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused

unable to meet the standards of competence to stand trial." *Id.* "Indeed, under the federal statute, the district court has not only the prerogative, but the duty, to inquire into a defendant's competency whenever there is 'reasonable cause to believe' that the defendant is incompetent to stand trial." *United States v. White*, 887 F.2d 705, 709 (6th Cir. 1989).

We need not decide whether Ross's behavior after the denial of the first competency motion constituted a change in circumstances because the trial court did so itself.  At the hearing for the second competency motion, the court ordered a competency hearing and made a finding that "there is reasonable cause to believe that [Ross] may not be able to properly assist in his defense."  The threshold for finding that a defendant may be incompetent to stand trial is *lower* than the baseline for competency to represent oneself.  *See Indiana v. Edwards*, 554 U.S. 164, 177-78 (2008).  Accordingly, determination of the need for a hearing regarding competency to stand trial brought into question the higher standard for self-representation and should have triggered appointment of counsel at least until the competency to stand trial issue was resolved.

Other courts have concluded that a defendant may not be permitted to waive counsel while the issue of competency is pending. *See United States v. Zedner*, 193 F.3d 562, 567 (2d Cir. 1999); *United States v. Klat*, 156 F.3d 1258, 1263 (D.C. Cir. 1998); *United States v. Purnett*, 910 F.2d 51, 52 (2d Cir. 1990).  These cases support a common-sense viewpoint that a defendant cannot represent himself at his own competency hearing, the purpose of which is to determine whether a defendant understands and can participate in the proceedings in the first place. *See Black v. Bell*, 664 F.3d 81, 101-02 (6th Cir. 2011).  For example, the Second Circuit stated: "Logically, the trial court cannot simultaneously question a defendant's mental competence to stand trial and at one and the same time be convinced that the defendant has knowingly and intelligently waived his right to counsel." *Purnett*, 910 F.2d at 55.  Thus, a trial court should "appoint counsel—whether defendant has attempted to waive it or not—and counsel must serve until the resolution of the competency issue." *Id.* at 56; *see also*

*Zedner*, 193 F.3d at 567 (holding that a trial court "must hold a competency hearing and appoint counsel to serve at least through that proceeding").

The D.C. Circuit held that it is "contradictory to conclude that a defendant whose competency is reasonably in question could nevertheless knowingly and intelligently waive her Sixth Amendment right to counsel. Such a defendant may not proceed *pro se* until the question of her competency to stand trial has been resolved."[1] *Klat*, 156 F.3d at 1263 (footnote omitted). The defendant in *Klat* "was erroneously denied her Sixth Amendment right to counsel because the district court found reasonable cause to doubt appellant's competency to stand trial and yet failed to appoint counsel to represent her through the resolution of the competency issue." *Id*. The Supreme Court has expressed similar concern regarding the waiver of the competency hearing itself when there is reason to believe a defendant is incompetent. *See Pate v. Robinson*, 383 U.S. 375, 384 (1966) ("[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial.").

The cases discussed above differ slightly from this one in that those defendants had not actually been found competent to waive counsel before they were allowed to proceed pro se into their competency hearings. Although such a finding had been made in this case before the competency hearing, the court's continuing obligation to assess competency and resulting actions removes the distinction. *See Drope*, 420 U.S. at 181. After allowing waiver of counsel, the court subsequently determined that there was reasonable cause to believe Ross was incompetent to stand trial and ordered a competency hearing. This order reopened the question of Ross's competency to stand trial and, therefore, the more stringent question of his competency to represent himself.

These facts support our holding and undergird our disagreement with the dissent. Upon Ross's June 10 second motion to represent himself, the trial court found Ross

---

[1]This Court cited this language with approval in holding that a trial court did not err in refusing to allow a defendant to proceed pro se until after a competency hearing which had already been ordered. *United States v. Dye*, 351 F. App'x 92, 94 (6th Cir. 2009).

competent to proceed pro se.  The dissent concludes that it was therefore appropriate for the judge subsequently to "satisfy himself that the trial could properly proceed with the defendant's chosen   method of representation" by holding a hearing at which the defendant represented himself.  But that October 29 hearing was a competency-to-stand-trial hearing based on the government's second motion for a competency examination and hearing.  We do not dispute the wisdom of a judge's compliance with the duty to assure throughout the proceedings that a defendant is competent to stand trial.  But when that competency is at issue, both the Constitution and governing statutes require that the defendant be represented by counsel whose duty it is to assure that the evidence supporting competency is closely examined.   Assurance that the defendant has counsel is especially important where, as here, the steadfast belief of the defendant in his own competency—both to stand trial and to represent himself—is belied by his continuing bizarre behavior.

Although denying a request for waiver of counsel implicates a defendant's constitutional right to self-representation, "[r]equiring a defendant to proceed with counsel through a competency proceeding is no greater a denial of a defendant's right to self-representation than that of any other defendant whose waiver has been found not to be knowing and intelligent." *Purnett*, 910 F.2d at 56.  Moreover, the Supreme Court has held that a defendant's right to self-representation is not violated when he is assisted by counsel outside the presence of a jury so long as he retains the ability to address the court and make certain tactical decisions. *McKaskle v. Wiggins*, 465 U.S. 168, 179 (1984); *see also United States v. Jones*, 489 F.3d 243, 248-49 (6th Cir. 2007).

Even if the "Constitution does not force a lawyer upon a defendant," enforcing the Supreme Court's determination that the Constitution "require[s] that any waiver of the right to counsel be knowing, voluntary, and intelligent" requires representation until—as well as while—such a determination is made. *Tovar*, 541 U.S. at 87-88 (citations and internal quotation marks omitted); *see Dye*, 351 F. App'x at 94 (citing *Klat*, 156 F.3d at 1263) (affirming district court's decision to require a competency

hearing before allowing defendant to proceed pro se when there was reasonable cause to believe he was incompetent to stand trial).

In holding that the Constitution does not forbid states from refusing self-representation when a defendant is incompetent, the Supreme Court noted:

> [A] right of self-representation at trial will not "affirm the dignity" of a defendant who lacks the mental capacity to conduct his defense without the assistance of counsel.  To the contrary, given that defendant's uncertain mental state, the spectacle that could well result from his self-representation at trial is at least as likely to prove humiliating as ennobling.  Moreover, insofar as a defendant's lack of capacity threatens an improper conviction or sentence, self-representation in that exceptional context undercuts the most basic of the Constitution's criminal law objectives, providing a fair trial.

*Edwards*, 554 U.S. at 176-77 (citation omitted).  The "spectacle" risked by a potentially incompetent defendant representing himself at his own competency hearing touches precisely the same concerns.  Assuming that the defendant is, in fact, incompetent, the lack of a defense attorney to conduct an adequate investigation into the matter could prevent any flaws in the pro-competency position from coming to light.  This is particularly true when, as here, the pro se defendant believes and argues that he is competent, leaving no one to examine and challenge the evidence.  Accordingly, we hold that the Constitution requires a defendant to be represented by counsel at his own competency hearing, even if he has previously made a knowing and voluntary waiver of counsel.  *See also* 18 U.S.C. § 4247(d) (providing that a defendant "shall" be represented by counsel at competency hearing).

### 3.  Role of standby counsel at Ross's competency hearing

Despite the failure of the trial court to appoint full-time counsel, participation by standby counsel during a competency hearing may be sufficient to overcome a denial of counsel claim.  *United States v. Leggett*, No. 92-4269, 1994 WL 171441, at *2 (6th Cir. May 5, 1994).  To distinguish *Klat*, the Government argues that Ross was represented by standby counsel, thus providing him with a sufficient degree of representation.  In *Leggett*, this Court held that a defendant was not denied representation when standby

counsel "participated to a greater degree in the proceedings than did the standby counsel in *Purnett*," although the opinion does not state exactly what the standby counsel did. *Id.* at *2. In *Purnett*, the attorney was present at the competency hearing and took some actions on Purnett's behalf, but his "participation at these two proceedings was not focused on Purnett's competency" and there was no evidence that he had reviewed a copy of the competency evaluation. 910 F.2d at 55-56.

Similarly, the Eighth Circuit held that a defendant's right to counsel was not violated when he was represented by standby counsel at a competency hearing. *Wise v. Bowersox*, 136 F.3d 1197, 1203 (8th Cir. 1998). There, even though the defendant and the prosecutor both argued in favor of competence,

> the contrary point of view also was well represented. The trial court held this hearing at the instigation of Wise's standby counsel, Timothy Braun, who had served as Wise's attorney until Wise exercised his right to represent himself, at which time the court ordered Braun to serve as standby counsel, ready to consult with Wise. Braun believed that Wise was incompetent, and he attempted to show this at the hearing. The court allowed Braun to speak and to examine both of the experts who testified. This hearing, like the hearing held one month before, was a fair inquiry into Wise's competence in which Wise was afforded due process.

*Id.*

None of these cases articulates a specific standard to assess whether or not standby counsel rendered representation that was adequate to overcome a deprivation of counsel claim. Several circuits have employed the "meaningful adversarial testing" standard of *United States v. Cronic*, 466 U.S. 648, 656-57 (1984), to assess whether attorneys, who erroneously believed they no longer served as regular counsel, had provided adequate representation when they appeared at competency hearings. *See United States v. Collins*, 430 F.3d 1260, 1265-66 (10th Cir. 2005) (finding deprivation of counsel under *Cronic* when attorney at competency hearing "did not attempt to represent [the defendant], but rather abstained from providing the court with information relevant to the issue of competency"); *Appel v. Horn*, 250 F.3d 203, 206-208, 217 (3d Cir. 2001) (finding deprivation of counsel under *Cronic* when attorneys

"provided no information relevant to [defendant's] competency and specifically advised the court in response to its inquiry that they had nothing to put on the record at that time [and] did not challenge the psychiatrist's conclusion"); *Raymond v. Weber*, 552 F.3d 680, 682-85 (8th Cir. 2009) (finding *no* deprivation of counsel under *Cronic* when attorney conducted research, investigated the defendant's competency, and prepared for the hearing but chose not to contest competency based on his "own decision").

We agree that *Cronic*'s "meaningful adversarial testing" is the appropriate standard for assessing whether Ross's standby counsel provided representation that was adequate to overcome Ross's claim that he was deprived of counsel at his competency hearing. *See French v. Jones*, 332 F.3d 430, 438 (6th Cir. 2003). The record as it stands is insufficient to fully resolve this issue. The record does not contain clear evidence of meaningful adversarial testing or investigation of the evidence by standby counsel but it does establish the sequence of events. When the court allowed Ross to proceed pro se on June 16, 2008, it also appointed his then-attorney to be standby counsel, albeit with no particular instructions. On July 30, the prosecutor filed the second motion for a competency hearing, which noted that Ross opposed the motion and that his standby counsel "would indicate only that he would take no position on a renewed motion for psychiatric evaluation."

At the hearing on the Government's second competency motion on August 5, Ross's standby counsel shared conflicting thoughts on Ross's competence. He initially told the court that "Ross's allegations are so far-fetched, false, and detached from reality that the Court should consider ruling out a mental defect in this particular case," and suggested that Ross may simply be "trying to create error in this record." However, standby counsel went on to add, "I don't know what's going on. I don't know if it's an effort to create a record or I don't know if it reflects a detachment from reality, so I think that is relevant. I think his efforts to subpoena these witnesses who may harm his case indicate something is going wrong here. I just don't know what it is."

Upon ordering a competency hearing on August 5, the court instructed standby counsel to assist with the selection of a psychiatrist or psychologist. The court's August

12 order stated that the parties were unable to agree on a psychiatrist or psychologist to perform the examination and noted the court's selection of Dr. William Nixon, Ph.D, to perform the examination. The record does not indicate what role, if any, standby counsel had in the failed attempt to agree on an examiner. The order directed standby counsel to contact Dr. Nixon to schedule an examination and for Dr. Nixon to submit his report to Ross, standby counsel, and the prosecutor. An October 10 order noted the court's receipt of Dr. Nixon's report and provided that "either party" may request Dr. Nixon's presence for the hearing. The report itself states that the prosecutor and Ross's standby counsel "collectively provided" several documents for Dr. Nixon's review, but the report is otherwise silent as to steps taken by standby counsel. No other activity by the parties in advance of the hearing appears in the record.

During the October 29 competency hearing, the court specifically told Ross that "the reason I'm asking you to respond [to procedural questions] is because Mr. Early is standby counsel and you are representing yourself." Ross's standby counsel did not participate to any meaningful degree during the proceeding and declined multiple opportunities to argue. His only statements consisted of acknowledging that he received a copy of the report and forwarded it to Ross, agreeing that he had not requested Dr. Nixon's presence, declining to present any evidence with respect to Ross's competence to stand trial, and telling the court that he would not present evidence with respect to Ross's competence to represent himself but would instead "defer to Dr. Nixon's conclusions."

Based on the record before us, we are unable to conclude that Ross was sufficiently represented by counsel at the competency hearing to overcome his denial of counsel claim. On the other hand, the record before us is also inadequate for us to conclude that Ross was, in fact, completely deprived of representation at his competency hearing. Although Ross's standby counsel did not present argument during the competency hearing, it is conceivable that he did satisfy the minimum standard by adequately investigating, undertaking appropriate preparation for the hearing and then making an independent, strategic decision not to contest competency. *See Raymond*,

552 F.3d at 684-85 (holding counsel was not absent from competency hearing when he prepared for hearing but made "own decision" not to contest competency).

### 4. Remedy

The issue of a remedy for deprivation of counsel at a competency hearing is a question of first impression in this Circuit. However, "[i]t is settled that a complete absence of counsel at a critical stage of a criminal proceeding is a *per se* Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error." *Van v. Jones*, 475 F.3d 292, 311-12 (6th Cir. 2007); *see also French v. Jones*, 332 F.3d 430, 438 (6th Cir. 2003). Neither the Supreme Court nor the Sixth Circuit have considered whether a competency hearing is a "critical stage." "However, every federal court of appeals to take up the question has answered it affirmatively." Ronald A. Parsons, Jr., *Being There: Constructive Denial of Counsel at a Competency Hearing as Structural Error Under the Sixth Amendment*, 56 S.D. L. REV. 238, 242 & n.31 (2011) (listing cases from the Third, Fourth, Eighth, Ninth, Tenth, and D.C. Circuits). We join those circuits in holding that a competency hearing is a critical stage.

Other circuits are divided, however, as to whether automatic reversal is required when there has been a deprivation of counsel at a competency hearing. *Compare Appel*, 250 F.3d at 217-18 (holding retrospective analysis of a defendant's competency is not an appropriate remedy for a deprivation of counsel violation), *with Klat*, 156 F.3d at 1264 (remanding "for an evidentiary hearing to determine whether the competency hearing could have come out differently if [the defendant] had been represented by counsel"), *and United States v. Bergman*, 599 F.3d 1142, 1148-49 (10th Cir. 2010) (remanding to determine if the trial court could make a retroactive competency determination and, if so, to make such a determination).

We see no reason to create an exception to our established rule that complete deprivation of counsel during a critical stage warrants automatic reversal without consideration of prejudice. *See Van*, 475 F.3d at 311-12. It is unclear on this record whether or not standby counsel satisfied *Cronic's* requirement that his representation of

Ross provided "meaningful adversarial testing" of Ross's competency. Accordingly, we must remand the case to the district court for an evidentiary hearing to determine whether Ross was unconstitutionally deprived of representation.[2] Satisfaction of this standard requires evidence, at a minimum, that standby counsel (1) conducted an adequate investigation into Ross's competency, including reading and analyzing Dr. Nixon's report, and preparing for the hearing and (2) chose not to contest Ross's competency based on his own strategic decision rather than a belief that he simply had no obligation to do so over Ross's instructions.[3] If the court determines that the *Cronic* standard was satisfied, Ross was not unconstitutionally deprived of counsel and his conviction is affirmed. Otherwise, the conviction and sentence are vacated. *See Klat*, 156 F.3d at 1267.

In coming to this conclusion, we note that the prosecutor was expressly (and commendably) attempting to protect the record against this very result through the two motions for competency hearings. We do not wish to discourage motions for or grants of competency hearings when the matter is in any doubt but instead seek to provide guidance on the constitutional and statutory requirements to be followed so that hearings at this critical stage are not empty formalities but are meaningful adversarial determinations that generate a record sufficient for appropriate review on appeal.

## B. Admission of polygraph evidence

Ross's second and Burston's fourth claim[4] is that the district court erred in admitting evidence regarding a polygraph test which allowed the prosecutor to impermissibly vouch for a witness's credibility. Gabriel Lemus, an alleged co-conspirator, signed a plea agreement in which he agreed to submit to a polygraph

---

[2] Ross must, of course, be represented by counsel before and during this determination.

[3] Although we need not conduct a harmless error analysis, we do observe that Ross's appellate counsel's brief raises plausible challenges to Dr. Nixon's report which could have been raised at the competency hearing.

[4] Although we are remanding Ross's case for an evidentiary hearing, we will consider his remaining claims for the sake of possible further appellate review or in the event that Ross's conviction is affirmed after the hearing. For organizational clarity, we review the issues in the order presented in Ross's brief with Burston's overlapping issues included, followed by Burston's remaining issues.

examination upon request from the Government, although no such request occurred. The agreement was received in its entirety without objection from either party.

Before the polygraph portion of the agreement was discussed in Lemus's testimony, Ross's standby counsel objected.  At a bench conference, standby counsel stated: "[T]hat thing about a polygraph should be redacted because that suggests to the jury that, hey, maybe they did a polygraph on him."  The prosecutor responded that the witness's willingness to commit to a polygraph is not objectionable because it supports the witness's credibility.  The court ruled as follows: "The objection is overruled and we can take it up at the break, since it is overruled, okay?"

Shortly after the bench conference, the following exchange took place between the prosecutor and Lemus:

> Q.     And you agreed to submit to a polygraph examination if
>        we wanted you to, right—
> A.     Yes.
> Q.     —to verify your truthful cooperation, but we didn't
>        ask you to take a polygraph, did we?
> A.     No.

The prosecutor then asked questions about Lemus's plea obligation to testify truthfully at trial and made no further mention of the polygraph provision or any actions or decision-making by the Government relating to that provision.

This Court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Boyd*, 640 F.3d 657, 668 (6th Cir. 2011).  Although the Government contends that plain error review should apply because neither party objected to the prosecutor's question, the context of the prior, overruled objection made clear that Ross's standby counsel was attempting to exclude precisely the kind of testimony elicited. *See United States v. Haywood*, 280 F.3d 715, 725 (6th Cir. 2002) (holding that an objection to evidence as irrelevant and prejudicial was sufficient to preserve Fed. R. Evid. 404(b) issue).

A prosecutor's mere question as to whether a witness agreed to take a polygraph test as a plea agreement condition does not constitute prosecutorial misconduct. *United States v. Trujillo*, 376 F.3d 593, 608-09 (6th Cir. 2004). However, questions about whether a polygraph test was administered may rise to the level of improper bolstering of the witness's credibility, depending on the surrounding circumstances. *See Barnier v. Szentmiklosi*, 810 F.2d 594, 597 (6th Cir. 1987); *see also United States v. Gantley*, 172 F.3d 422, 430-31 (6th Cir. 1999) (finding that defendant's unsolicited testimony that "you know I'm telling the truth" because he had taken a polygraph test improperly bolstered his own credibility and prejudiced the government). "Improper bolstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *Passino v. Tessmer*, 61 F. App'x 124, 126 (6th Cir. 2003) (alteration, citation, and internal quotation marks omitted).

In deciding whether the improper statements were sufficiently flagrant to warrant reversal, this Court must examine: (1) whether the statements tended to mislead the jury or prejudice the defendants; (2) whether the statements were isolated or among a series of improper comments; (3) whether the statements were deliberately or accidentally placed before the jury; and (4) the total strength of the evidence against the defendants. *United States v. Manthey*, 92 F. App'x 291, 296 (6th Cir. 2004).

In context, it appears the prosecutor's question was intended to address the concern of Ross's standby counsel that a jury might think the Government *did* request a polygraph and then be curious as to result. *Cf. Gantley*, 172 F.3d at 430 n.6 ("'[I]t would have to be a pretty unsophisticated jury not to figure out that he had passed the test or it wouldn't have been mentioned.'"). The prosecutor never directly stated or suggested that the Government's decision not to request a polygraph was because it had knowledge of additional evidence to corroborate the witness's veracity. Accordingly, we hold that the district court did not abuse its discretion in allowing the plea agreement to be entered into evidence or the prosecutor to ask questions concerning its polygraph provision. *See Trujillo*, 376 F.3d at 608-09.

## C. Speedy Trial Act

Ross's third issue presented is that the district court erred in not dismissing the indictment for pre-indictment delay and committed violations of the Speedy Trial Act. "The Supreme Court recognizes that the Due Process Clause of the Fifth Amendment protects against oppressive pre-indictment delay." *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009) (citing *United States v. Marion*, 404 U.S. 307, 324-25 (1971)). "In this circuit, dismissal for pre-indictment delay is warranted only when the defendant shows substantial prejudice to his right to a fair trial and that the delay was an intentional device by the government to gain a tactical advantage." *Id.* (citation and internal quotation marks omitted). There is no merit to Ross's pre-indictment delay claim because Ross has made no allegation that any such delay was intentional or in bad faith.

Ross filed a motion to dismiss under the Speedy Trial Act on May 28, 2008, which was denied in an order dated June 17, 2008. Ross filed another Speedy Trial Act motion after the trial, which was also dismissed. This Court may only consider the alleged Speedy Trial Act violations contained in the first motion because any such claims not raised before trial are waived. 18 U.S.C. § 3162(a)(2); *United States v. Stewart*, 628 F.3d 246, 253 (6th Cir. 2010). The Speedy Trial Act violations raised on appeal which were alleged in Ross's first motion include the court's orders extending the trial date and excluding the difference in days from the previous trial dates on December 17, 2007, February 1, 2008, April 28, 2008, and May 1, 2008. Ross argues that each order failed to consider the appropriate statutory factors.

Delays due to continuances granted by the court may be excluded from the time within which a trial must start under the Speedy Trial Act if "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The trial court must state "in the record of the case, either orally or in writing, its reasons" for so finding. *Id.* As the Government correctly observes, these orders either expressly state the reasons for the various continuances, or reference parts of the record that do, and contain express findings that

the ends of justice outweigh the best interests of the public and the defendant to a speedy trial.

The first order appropriately noted the requests from all parties to receive additional time for preparation due to the "voluminous discovery." *See Stewart*, 628 F.3d at 253-54. The second order appropriately noted the need for Ross's new attorney to prepare for trial. *See* 18 U.S.C. § 3161(h)(7)(B)(iv); *United States v. White*, 129 F. App'x 197, 202 (6th Cir. 2005). The third order, pursuant to a previous order, appropriately excluded the time until another attorney could be appointed. *See White*, 129 F. App'x at 202. Ross argues that the final order excluding time until "the new trial date" created an open-ended time period which served no purpose and that there was no need for this continuance because an ends-of-justice continuance had issued days earlier. When read in context, it is clear that the court was merely correcting an error from the previous order which inadvertently stated that the exclusionary period began on April 8, 2008 rather than April 2, 2008, which was the day after a new attorney was appointed. Moreover, the latter order's reference to "the new trial date" was not an "open-ended period" but was merely a reference to the new, June 24, 2008 trial date specified in the former order. These orders satisfy the statutory requirements.

To the extent Ross's arguments rely on this Court's holding in *United States v. Tinklenberg*, 579 F.3d 589, 598 (6th Cir. 2009), that "a pretrial motion must actually cause a delay, or the expectation of a delay, of trial in order to create excludable time," the delay requirement was expressly rejected by the United States Supreme Court in an appeal of that decision, *see* 131 S. Ct. 2007, 2010-16 (2011).

**D. Compulsory process**

Ross's fourth issue presented is that he was denied the right to compulsory process when the district court rejected his request to subpoena two victims of the scheme who sold their vehicles for bad checks. Ross alleges that these individuals, Brian Hemker and Keith Colasanti, would have testified that alleged co-conspirator Gabriel Lemus was present during the fraudulent transactions in contrast to Lemus's testimony that he merely printed the fraudulent checks. According to Ross, this evidence

demonstrating Lemus's greater involvement in the conspiracy would have "describe[d] the whole modus operandi of all the people" involved in the scheme, impeached Lemus's testimony, and supported Ross's ongoing theory that the Government's investigation was biased against him by concealing evidence of additional culpability of others.

District courts should issue subpoenas at an indigent defendant's request "if the defendant shows . . . the necessity of the witness's presence for an adequate defense." Fed. R. Crim. P. 17(b).  This Court reviews a district court's denial of a Rule 17(b) motion for abuse of discretion and "should not reverse unless the exceptional circumstances of the case indicate that defendant's right to a complete, fair and adequate trial is jeopardized." *United States v. Flynn*, 265 F. App'x 434, 446 (6th Cir. 2008) (quoting *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990)).

Ross does not explain how Lemus's greater contact with the victims would minimize Ross's own culpability.  Lemus's participation in these two transactions would not have been mutually exclusive of Ross's involvement in the scheme because the Government never alleged that Ross was present during the fraudulent purchases instead of Lemus.  To the extent that these witnesses's testimony might have impeached the Government's investigation, the court allowed Ross to subpoena multiple law enforcement officers in addition to those called by the prosecution in order to present that argument.  *See United States v. Cannon*, 475 F.3d 1013, 1022-23 (8th Cir. 2007) (finding no denial of compulsory process when intended witness's testimony would have been cumulative).  Indeed, the court allowed Ross to subpoena thirty of the 104 witnesses he requested and to question each of the witnesses called by the Government. Ross has not pointed to any authority to support his claim that the failure of the court to authorize subpoenas under these facts prevented him from presenting "an adequate defense."  For these reasons, we conclude that the district court did not abuse its discretion in refusing to issue the two subpoenas.

**E. Judicial bias against Ross**

Ross's fifth issue presented is that his Sixth Amendment right to a fair trial was violated by "the apparent bias of the trial judge" in making several interruptions during Ross's cross-examinations which "were often demeaning, sarcastic, and in a few instances, hostile." The examples offered by Ross consist mostly of terse statements suggesting that Ross was asking a question which had already been answered.[5] This Court generally reviews a trial court's purportedly biased conduct for plain error when the defendant does not make a contemporaneous objection. *United States v. Hynes*, 467 F.3d 951, 957-58 (6th Cir. 2006).[6]

"Judicial misconduct is found where the judge's remarks clearly indicate a hostility to one of the parties, or an unwarranted prejudgment of the merits of the case, or an alignment on the part of the Court with one of the parties." *United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006) (citations and internal quotation marks omitted). Even sarcastic comments which "could have been phrased more diplomatically" do not amount to misconduct when they "primarily evidence the judge's effort to seek additional information from witnesses and not any prejudice or bias." *Id.*; *see United States v. Powers*, 500 F.3d 500, 511 (6th Cir. 2007) ("A trial court judge . . . may interject himself into the trial, speak to counsel, and question witnesses in order to clear up confusion regarding the evidence or aid in its orderly presentation.").

Although the trial court's comments to Ross certainly suggest some frustration with Ross's often redundant and scattered questions throughout the lengthy trial, we believe these statements in context evidence an attempt to direct Ross's cross-examinations to relevant inquiries in recognition of Ross's lack of trial experience. This view is supported by the following instruction to the jury during Ross's closing

---

[5]As a representative example, the court replied in response to an "asked and answered" objection from the Government: "Well, it has been, and the question is argumentative, Mr. Ross. You got an answer. You didn't like the answer. You asked it again in an argumentative way and the answer is the same. It's been that way for about a week now and it's not working, so you need to try something else."

[6]Although we have implied a lower standard should apply when raising a contemporaneous objection "would have exacerbated the situation," *id.*, Ross does not present this argument in his brief and concedes plain error review.

argument, without any prompting from Ross, after the prosecutor objected to Ross's argument as being outside the evidence:

> Members of the jury, Mr. Ross is entitled to make his arguments to you and he is entitled to comment on the evidence. What he says is not evidence and what he says is not testimony to you, but he is entitled to the respect that all the lawyers are entitled to, and please pay careful attention to him as he discusses the evidence in the case.

After a careful review of the record, we find no improper prejudice or bias by the trial court judge.

## F.  Improper argument of prosecutor

Ross's sixth argument presented and Burston's fifth is that they were denied a fair trial by the prosecutor's improper arguments. This Court reviews only for plain error because neither defendant objected to any of the prosecutor's statements during the trial. *United States v. Owens*, 426 F.3d 800, 806 (6th Cir. 2005). Plain error results from prosecutorial misconduct when the prosecutor makes improper comments that are so flagrant that they "undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *United States v. Young*, 470 U.S. 1, 16 (1985). In the context of prosecutorial remarks made to a jury, this Court has developed four factors to determine if the prosecutor's comments are so flagrant that they threaten fundamental fairness: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *United States v. Modena*, 302 F.3d 626, 635 (6th Cir. 2002) (quoting *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001)).

The only argument Burston cites as improper was the following statement in the prosecutor's closing argument:

> The second thing that Mr. Lemus told you was that as time went by Mr. Burston would also, first, stop by to pick up checks with Mr. Ross, but then Mr. Ross sent him to pick up checks. Just like Mr. Ross spilled

> water on the table and told Mr. Burston to clean it up just now, Mr.
> Burston was involved in this conspiracy and was taking orders from
> Bryan Ross.

The prosecutor's statement was clearly just a metaphor to sum up his case theory. Burston cites no authority to demonstrate how such a comment was improper and no explanation as to how it was "an impermissible attack on Burston's character." Moreover, the court properly instructed the jury that the closing arguments are not evidence. *See United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (noting that such an instruction "can generally correct" an improper argument). Accordingly we find no merit to Burston's allegation of improper argument.

Ross's claims of improper argument all stem from comments allegedly not supported by the evidence. First, Ross argues that the prosecutor improperly implied that a phone record proved that Ross owned a phone which was used to call one of the victims. However, the telephone record introduced at trial identified Ross as the owner of the account associated with that number. Kimberly Beneteau, a victim, testified that her "caller ID" displayed "313-220-2780" as the originating number of a phone call regarding the sale of her car. This is the same number which appears as a "subject number" on the phone record introduced at trial as Exhibit 122 to show Ross's ownership. The phone company custodian who authenticated the phone record testified that he was asked to provide subscriber information for that number, but, when identifying the exhibit, stated that the document contained subscriber information for a slightly different number which also appears on the document, "313-220-2151." Ross never suggested at trial that the exhibit itself was inaccurate or that the phone number did not belong to him. Similarly, Ross presents no argument or evidence on appeal that the exhibit itself was incorrect. Thus, the prosecutor's argument was supported by the record.

Second, Ross argues the prosecutor improperly implied Ross "invented the scheme" and made thousands of dollars. Although Ross is correct that no witness testified to the exact amount earned by Ross as opposed to one of his accomplices, multiple witnesses testified that they had given Ross thousands of dollars after selling

one or more vehicles. Thus, in light of the co-conspirators' testimony that Ross conceived of the scheme, it was a reasonable inference that Ross had in fact pocketed at least several of the thousands of dollars obtained from the victims.

Third, Ross argues the prosecutor "improperly appealed to the passions of the jurors" and contradicted witness testimony when he told the jury that Ross "used and hid behind his ex-girlfriend Aliska Walton [and put] her up front." In fact, Walton herself testified that Ross instructed her to "portray a significant other" of an accomplice as part of the scheme to mislead victims when negotiating purchases. The statement was a reasonable inference. Fourth, Ross argues the prosecutor lacked evidentiary support to tell the jury that Ross involved Burston in the scheme because Burston "agreed to do [Ross's] bidding." However, there was ample testimony from the co-conspirators that Burston participated in the scheme and followed Ross's instructions. Finally, Ross argues that the prosecutor falsely implied that Dewayne Eli was incarcerated as a result of his role in Ross's scheme. However, we agree with the Government that this fact was presented through the testimony of two different witnesses. Thus, we find no merit to each of Ross's allegations of improper argument.

**G.  Discovery violations**

Ross's seventh issue presented is that he was denied a fair trial as a result of the Government's suppression of exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "[T]here is some confusion in this circuit with respect to the appropriate standard of review to apply to the denial of a motion for a new trial based on *Brady* violations." *United States v. Douglas*, 634 F.3d 852, 860 (6th Cir. 2011) (alteration in original) (quoting *United States v. Heriot*, 496 F.3d 601, 605 (6th Cir. 2007)). We need not decide between the two standards because the result is the same under either.

*Brady* violations have three elements: "[1] [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263,

281-82 (1999).  To establish prejudice, "the nondisclosure [must have been] so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  *Id.* at 281.

Ross's first allegation—that he was not provided with records for his telephone number—relies upon the same inadvertent misstatement by the records custodian referenced in the previous section.  However, the exhibit on its face clearly states that the phone number that was identified by the victim was owned by Ross.  Ross's next allegation is that the Government failed to provide him with subpoenas and telephone records for numbers linked to two co-conspirators.  Ross asserts that these records would show that the other co-conspirators were calling each other—but not him—which would have enabled him to impeach witnesses about their involvement and help prove his defense that he was not behind the scheme.  However, the prosecutor told the court that subpoenas drafted by state authorities for the two phone numbers were never actually executed, meaning that no records were obtained nor were any suppressed.  Moreover, Ross cannot demonstrate prejudice because there is no evidence that the records would have revealed the facts he alleges.  Even if they did, the prosecution's theory was that Ross instructed several of the co-conspirators to act on his behalf to conceal his involvement, so the existence of activity beyond his direct participation would not have meant he was innocent of the charges for which he was convicted.

Third, Ross alleges that the Government "unfairly surprised" him at trial by failing to provide him with any information regarding witness Djanada Montgomery until immediately before her testimony, including the fact that she was going to discuss a description of an occasion in which Ross purportedly searched her person for a recording device.  His fourth allegation is that the Government did not disclose before trial that witness Gabriel Lemus had made several corrections to the investigator's interview notes and Ross did not learn of this fact until the prosecutor asked Lemus about it during his testimony.  Neither of these "unfair surprise" claims create reversible error because this Court has held that "[a]ny disadvantage that a defendant might suffer because of the tardiness of impeachment material can be cured by asking for a recess."

*United States v. Crayton*, 357 F.3d 560, 569 (6th Cir. 2004). As in *Crayton*, Ross cross-examined the witnesses regarding the "new" information, and it is "difficult to imagine that the jury would have reached a different result" had Ross been given the information sooner. *Id.* Thus, to whatever extent the Government should have produced the information at an earlier time, there was no violation of Ross's constitutional rights under *Brady*. *See id.*

Finally, Ross asserts that the "Government produced three boxes of discovery just three days before trial was to begin . . . in bad faith." The record reflects that the local sheriff's department presented the U.S. Attorney's office with the documents and records—the existence of which was previously unknown to the prosecutor—on November 20, 2008, and that, immediately upon receipt, the prosecutor contacted the defense teams of both co-defendants and requested a pre-trial conference with the judge later that day. Ross had requested several of the documents contained therein on previous occasions. The trial date was continued multiple times over a two-month span in order to give the parties a chance to review the materials.

Ross cannot prevail on this claim because "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (citation omitted). "[E]ven tardy disclosures of *Brady* material do not violate the defendant's constitutional rights unless he can demonstrate the delay denied him a constitutionally fair trial." *Farrell v. United States*, 162 F. App'x 419, 424 (6th Cir. 2006) (citing *Davis*, 306 F.3d at 421)). Ross was not denied a fair trial because the prosecution was equally disadvantaged by the late disclosure and both sides had several weeks to review the material.

**H.  Ineffective assistance of counsel**

Ross's eighth and Burston's second issue presented is that they were denied effective assistance of counsel. Ross's claim, assuming his waiver of counsel is upheld upon remand, may be easily discarded because "a defendant cannot waive his right to counsel and then complain about the quality of his own defense." *Wilson v. Parker*, 515

F.3d 682, 696 (6th Cir. 2008); *see also Holmes v. United States*, 281 F. App'x 475, 480-81 (6th Cir. 2008) (applying *Wilson* to direct criminal appeal).  To the extent his standby counsel was deficient, Ross "merely suffered the consequences of his decision to proceed pro se."  *Wilson*, 515 F.3d at 697.

Burston did not waive his right to counsel and bases his ineffective assistance claim on a combination of Ross's conduct at trial and three errors by his trial counsel: (1) failure to move for a severance, (2) failure to ensure that an exhibit was available to the jury, and (3) failure to make an opening statement.  However, "[i]neffective assistance claims are more properly raised in a post-conviction proceeding brought pursuant to 28 U.S.C. § 2255, where the record regarding counsel's performance can be developed in more detail. . . . This Court typically will not review a claim of ineffective assistance on direct appeal except in rare cases where the error is apparent from the existing record."  *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006) (citation omitted).

Although this Court has not explained exactly when an error is sufficiently apparent, our ability to review ineffective assistance claims on direct appeal appears to depend on whether there are any factual issues which could be resolved best by the district court.  *Compare United States v. Meeker*, 411 F.3d 736, 749 (6th Cir. 2005) (declining review when court "can imagine several reasons" why trial counsel did not request continuance), *with United States v. Lewis*, 605 F.3d 395, 400 (6th Cir. 2010) (reviewing when trial counsel "provided his reasons" for declining to file motion and district court "clearly indicated how it would have ruled" had motion been filed).  Burston argues this is a "rare case" fit for direct review because it "prevents a novel question of law and forms the perfect storm under *Strickland*" due to the combination of Ross's prejudicial conduct during his self-representation and the deficiency of Burston's own trial counsel.  We believe that the presentation of a novel legal question makes it *more* necessary to ensure the record is sufficiently developed before reaching an answer.  Because further exploration and findings of facts would be helpful for resolving these claims, we decline to consider Burston's ineffective assistance arguments

on direct appeal but "observe that he is free to raise the issue in a postconviction proceeding under 28 U.S.C. § 2255 where a more complete factual record may be developed." *Meeker*, 411 F.3d at 749. We will, however, consider Burston's complaints about Ross's trial conduct as a stand-alone due process claim. *See infra* Part II.K.

## I. Sufficiency of the evidence

Ross's ninth and Burston's sixth issue presented is that there was insufficient evidence to prove their guilt. A sufficiency of the evidence claim is a "steep climb" in which the defendants must show that, after construing the evidence in favor of the Government, no rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *United States v. Stafford*, 639 F.3d 270, 273 (6th Cir. 2011) (citations and internal quotation marks omitted).

Burston's entire sufficiency of the evidence argument is: "The pervasiveness of the evidence suggested that the jury should find an agreement of any kind to satisfy that element of the conspiracy. Burston's association with Ross, without more, was insufficient to prove him guilty." To the contrary, we believe there was ample evidence in the form of testimony by several accomplices that Burston participated in the conspiracy by relaying information about the checks and assisting with the sale and resale of multiple vehicles. In particular, a check bearing Burston's fingerprint and the testimony of Dennis Goode established that Burston personally cashed a check from a car dealer obtained by Ross upon reselling one of the vehicles.

Ross attacks the sufficiency of the evidence for his convictions on multiple grounds. He argues that, with respect to the conspiracy count, "the testimony of all the witnesses was so inconsistent and so inherently incredible that no rational trier of fact could find him guilty." As with Burston, however, there was ample witness testimony to support the conspiracy conviction, and this Court may not retrospectively assess the credibility of witnesses. *United States v. Henderson*, 626 F.3d 326, 341 (6th Cir. 2010). Ross next challenges the sufficiency of the evidence as to the transaction in the second count of the indictment because there was "no evidentiary connection" between a phone number on a victim's phone and Ross. However, as discussed *supra* in Parts II.F-G, the

telephone record introduced at trial clearly identifies Ross as the owner of the account associated with that number.

Ross also argues that one of the "overt acts" in the conspiracy count of the indictment specified that he gave three counterfeit checks to "the owner" of a 1993 Chevrolet Corvette, and that this language "modified" substantive counts five, six, and seven, which charged Ross for uttering each of the checks without reference to "the owner." Because the victim who received the bad checks was not the "titled owner of the Corvette" and only had "possession if it to sell for a friend," Ross asserts that his convictions on those counts should be reversed. However, Ross cites no authority to support the proposition that the terms of one count in an indictment can "modify" the evidence required to prove a separate count, nor are we aware of any. Conspiracy and counterfeiting are entirely separate offenses, *see United States v. Kelly*, 204 F.3d 652, 656 (6th Cir. 2000), and Ross does not dispute that the Government proved the substantive counts as charged.

Finally, Ross argues that Burston's acquittal on the substantive charge in count three means that there was insufficient evidence to convict Ross of the same charge, since he "could not have given a check to someone not involved." This claim is without merit because "inconsistent verdicts are generally held not to be reviewable." *United States v. Lawrence*, 555 F.3d 254, 261-62 (6th Cir. 2009) (citing *United States v. Powell*, 469 U.S. 57, 65 (1984)). Moreover, the verdicts are not necessarily inconsistent because the jury could have found that Ross completed that particular transaction with another co-conspirator or at least had a reasonable doubt as to whether Burston was the accomplice with whom Ross carried out the act.

## J.  Unreasonableness of sentencing enhancements

Ross's tenth issue presented is that his sentence was unreasonable because the court erred in applying certain guidelines enhancements. The district court did not ask the *Bostic* question during the sentencing hearing. *See United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004). Thus, we review the district court's sentencing determination for reasonableness under a deferential abuse-of-discretion standard rather

than plain error.  *United States v. Chiolo*, 643 F.3d 177, 180 n.1 (6th Cir. 2011).
Sentencing factors are to be determined by a preponderance of the evidence.  *United
States v. Miller*, 161 F.3d 977, 984 (6th Cir. 1998).

Each of the four errors asserted by Ross in this claim is that the court lacked a
sufficient factual basis to apply the sentencing enhancements.  However, we agree with
the Government that there was an adequate factual basis in the record to support each
enhancement.  The court was justified in applying the obstruction enhancement because
of Ross's continued attempts to get his appointed counsel removed.  The leadership
enhancement was justified by the testimony of multiple witnesses that Ross created and
orchestrated the scheme.  The enhancement for ten or more victims was supported by
evidence that fifteen victims had suffered pecuniary losses.  Finally, the enhancement
for loss amount was also supported by evidence which, contrary to Ross's argument, did
not have to be supported by the testimony of witnesses at trial so long as the "evidence
has sufficient or minimally adequate indicia of reliability and the defendant has an
opportunity to rebut such evidence that he perceives is erroneous."  *United States v.
Christman*, 509 F.3d 299, 305 (6th Cir. 2007).  We find no abuse of discretion regarding
the sentencing enhancements.

## K.  Impact of Ross's conduct on Burston's right to a fair trial

Burston's first issue presented is that the "cumulative effect of the aberrant trial
conduct" of Ross deprived him of a fair trial, in violation of his right to due process.
Burston's argument is, in short: "Although Bryan Ross may have had a right to act as
his own attorney, he had no right to doom the defense of his codefendant."  The
Government responds that only a violation of cumulative *errors* creates a due process
violation, and no actual errors with respect to Burston occurred as a result of Ross's self-
representation.  Burston concedes that his failure to object at trial to Ross's statements
means that this Court reviews only for plain error.  Fed. R. Crim. P. 52(b); *United States
v. Moore*, 240 F. App'x 699, 711 (6th Cir. 2007).

Rule 8(b) of the Federal Rules of Criminal Procedure provides that defendants may be indicted together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." In turn, Rule 14(a) permits a district court to grant severance if joinder "appears to prejudice a defendant or the government." "[A]s a general rule, persons jointly indicted should be tried together." *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (citation and internal quotation marks omitted). The Supreme Court has stated that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Even where the risk of prejudice is high, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* at 534. Indeed, "[a] request for severance should be denied if a jury can properly compartmentalize the evidence as it relates to the appropriate defendants." *Driver*, 535 F.3d at 427 (citation and internal quotation marks omitted). Thus, to prevail on his severance argument, Burston must show "compelling, specific, and actual prejudice from [the] court's refusal to grant the motion to sever." *Id.* (citation and internal quotation marks omitted).

Burston has not identified any specific prejudice he suffered as a result of Ross's self-representation. Although Ross may have done a poor job and even, as the trial judge suggested, "unwittingly incriminat[ed]" himself, Burston does not point to any particular statements made by Ross that incriminate Burston or suggest any activity between them. *See United States v. Atcheson*, 94 F.3d 1237, 1244 (9th Cir. 1996) (finding no unfair prejudice when co-defendant's defense incriminated only himself). Moreover, this Court has held that argument made by a co-defendant's attorney during opening and closing statements do not provide an evidentiary basis for severance because "[t]hat argument was not evidence." *United States v. Davis*, 170 F.3d 617, 621 (6th Cir. 1999). Here, Ross did not testify and the trial court provided the jury with instructions that "[t]he statements and arguments of the lawyers and Mr. Ross are not evidence. Their questions to the witnesses, arguments and statements are not . . . made under oath [and] are not

evidence." The court added that any objections made by the "lawyers for both sides and Mr. Ross" should not be held "against either side." The court also instructed the jury in the middle of Ross's closing argument that "[w]hat [Ross] says is not evidence and what he says is not testimony to you." Accordingly, the jury was appropriately instructed that anything Ross did or said should not be used to convict Burston. *See United States v. Mikolajczyk*, 137 F.3d 237, 241-42 (5th Cir. 1998) (holding that a jury instruction alleviated prejudice resulting from sudden disappearance of co-defendant mid-trial). We find that Ross's conduct did not unconstitutionally deprive Burston of a fair trial.

**L.  Admission of photocopy of check into evidence**

Burston's third issue presented is that the trial court erred in admitting Exhibit 125, a photocopy of a check which bore an inked fingerprint that the bank required him to produce before cashing the check. The only legal basis Burston cites in his brief for this argument is Federal Rule of Evidence 1003, which now provides: "A duplicate is admissible to the same extent as the original unless . . . the circumstances make it unfair to admit the duplicate." Burston argues that unfairness stems from the fact the "destruction of the original prevented Burston from having the check analyzed to determine whether he had personally handled the check, thereby leaving latent fingerprints on it."

Although Burston's attorney did not specifically object to the check based on Rule 1003, he did make a general objection to the authenticity of the check under the "best evidence" rule. Accordingly, we review the district court's evidentiary ruling for abuse of discretion. *United States v. Boyd*, 640 F.3d 657, 668 (6th Cir. 2011). Burston does not cite, nor have we been able to find, a single case in which this Court excluded a copy of a document under Rule 1003. We do not believe this should be the first. Even if Burston's latent fingerprints were somehow not on the original check (or if someone else's were), he makes no showing that the inked fingerprint was fraudulent or could not have been fairly matched to him. *See United States v. Rose*, 522 F.3d 710, 715 (6th Cir. 2008). Moreover, Burston's accomplice, Dennis Goode, testified that he saw Burston

obtain the check and then submit the inked fingerprint before attempting to cash it.  The district court did not abuse its discretion in admitting a photocopy of the check.

### III.  CONCLUSION

For the reasons stated above, we **AFFIRM** Burston's conviction.  We **REMAND** for an evidentiary hearing to determine whether Ross was unconstitutionally deprived of representation during his competency hearing.  If the district court determines that Ross was not unconstitutionally deprived of counsel, his conviction and sentence are affirmed.  Otherwise, his conviction and sentence are vacated.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

BOGGS, Circuit Judge, concurring in part and dissenting in part.  I concur in all of the majority opinion in this case with the exception of Section II.A. 2, pages 8–12. I cannot agree with a holding that would effectively oblige a trial court, before holding a cautionary inquiry into the defendant's continued competence to stand trial, to overrule a prior decision that the defendant is competent to waive representation.  Such a rule will raise the legal and practical costs of the diligent pursuit of a trial judge's ongoing duty to ensure the defendant's competence and is generally contradictory, confusing, and unhelpful.  I therefore respectfully dissent.

My reasoning rests on a careful examination of the sequence of events in the trial proceedings, in which Ross's mental capacity was always a lurking issue.  As the court properly points out at page 2, Ross had "exhibited bizarre and paranoid behavior which led to the withdrawal of three court-appointed attorneys."  Nevertheless, when Ross invoked his constitutional right to self-representation, the court ultimately undertook a careful and proper inquiry into Ross's knowledge and ability to represent himself, and granted his motion, with the appointment of standby counsel.

Later, out of an abundance of caution, the trial court held a competency hearing, without full-time counsel for Ross, and again found him competent to stand trial and represent himself.  Significantly, the court did not alter in any way its prior judgment that Ross was capable of an intelligent and voluntary waiver of his right to counsel. Though Ross now also challenges this judgment, the lead opinion, at pages 4–8, correctly holds that the trial court did not err in finding Ross competent.  At this initial hearing, Ross's ability to make a voluntary and intelligent waiver of his right to counsel and his competence to defend himself were both at issue.  It would make no sense to permit him to waive counsel and represent himself if he were indeed incompetent to represent himself.

The court may be right, and probably is, in stating at page 9 that there is a lower threshold for the competence to waive counsel than for the competence to represent oneself. But if the trial court did not err in allowing Ross to proceed without counsel in the initial determination of whether he was able to waive counsel and represent himself, I find it hard to see why there should be a rigid rule that a trial court must first appoint full-time counsel, thus potentially upsetting the rapport with the defendant that may have been established, before the court can undertake *any* further steps to satisfy itself that nothing that has happened during trial should upset the judgments earlier made. In other words, if counsel is now *required*, at a later stage in the proceeding, it is difficult for me to see why, by the court's reasoning, it should not equally have been required at the initial determination, when Ross's mental state was certainly in issue and the court had significant evidence before it that Ross's mental state could be questionable.

In addition to what seems to me to be the questionable logical basis for the court's opinion on this point, I believe it also creates practical difficulties for the conscientious trial judge, and I see nothing in the record (or even in the court's opinion) to suggest that this trial judge was not conscientious. Today's ruling means that a trial judge may well be understandably reluctant—especially in marginal cases—to have any type of proceeding focusing on a defendant's competence to represent himself once that judgment has initially been made.

The trial judge here did what seems to me to be a sensible thing in taking additional evidence, but in not effectively prejudging the outcome by telling the defendant that he must stand aside and allow himself to be represented by counsel that he does not want. Such interposition by the judge may well make it more difficult for the defendant to carry out his own representation, under the dynamic circumstances of a trial proceeding.

This is not to say that there may not be circumstances in which a judge should follow the course now required by this opinion. However, I believe that such judgments are better made by the trial judge, who has all the circumstances before him or her. If such a judgment is made unreasonably, the merits of that decision could ultimately be

reviewed.  But today's decision is a recipe for less-informed judges and more difficult judicial review.  Had the court not granted any additional hearing, it seems plausible that we would have been more reluctant to reverse a *sub silentio* holding that no further inquiry was necessary.  From the record as presented, there is no strong indication that Ross's condition at the time of the allegedly flawed hearing, as troublesome and at times bizarre as it was, significantly differed from the behavior that he had displayed at various points earlier in the proceedings.  Thus, in effect, no good deed goes unpunished: the trial court's judgment is upset precisely because the judge saw a potential problem and wished to satisfy himself that the trial could properly proceed with the defendant's chosen method of representation.  I would thus affirm on this point, as well as on all the other points, on which I agree with the court's opinion.