NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0511n.06

No. 13-2253

**FILED**
Jul 21, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| BRYAN ROSS, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

BEFORE:     BOGGS and STRANCH, Circuit Judges; CARR, District Judge.[*]

JANE B. STRANCH, Circuit Judge.  This appeal after remand concerns a single issue: whether defendant Bryan Ross received constitutionally adequate representation during a pretrial competency hearing.  Ross represented himself leading up to and during the hearing, but was aided by court-appointed standby counsel, Allen Early.  In a prior joint direct criminal appeal before this panel, Ross and codefendant Robert Burston challenged their convictions on multiple counts relating to a counterfeit-check scheme. *United States v. Ross*, 703 F.3d 856, 865 (6th Cir. 2012).  They brought twelve different types of claims between them, and we upheld the district court's rulings on all save the one before us here.  Finding the record insufficient to determine whether Early's representation met the minimum constitutional standard, we remanded the case with instructions to hold an evidentiary hearing on the issue.  After taking testimony from Early,

---

[*]The Honorable James Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

the district court issued an order establishing that Ross was adequately represented at the competency hearing. Ross appealed. With the benefit of the district court's additional fact finding, we now affirm Ross's conviction.

Before trial and while represented by Early (his third successive attorney in the case), Ross filed a motion to waive counsel and represent himself. *Ross*, 703 F.3d at 865. The Government then filed a motion for a competency examination and hearing, voicing concern about signs of delusion and paranoia Ross had exhibited and Ross's inability to get along with any of the different lawyers who had represented him. *Id.* The court denied Ross's motion solely out of concern that, without counsel, he would misspend defense funds provided to him by virtue of his indigent status. *Id.*

On June 10, 2008, Ross filed another motion to "substitute counsel until trial," which also expressed his ongoing desire to represent himself. *Id.* at 865-66. The court denied Ross's request for a new attorney, but permitted Ross to represent himself after determining that he knowingly and voluntarily waived his right to counsel. *Id.* at 866. The court then shifted Early to the role of standby counsel. *Id.* On July 30, the Government filed a second motion for a competency examination and hearing, which the court granted in an August 5 hearing without reappointing fulltime counsel. *Id.* On October 29, 2008 the court held the competency hearing and found Ross competent to stand trial based on the court's own observations and the report of a psychologist the court itself had selected, Dr. William Nixon. *Id.* at 866, 873. Ross later represented himself at trial with the assistance of yet another attorney acting as standby counsel and was convicted of conspiracy and five of six substantive counts against him. *Id.* at 866.

We review the district court's legal conclusions concerning Early's representation de novo, and review its factual findings under a clear error standard. *See Ornelas v. United States*,

517 U.S. 690, 699 (1996) (appellate courts review questions of law de novo and questions of historical fact for clear error with respect to probable cause determinations); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995) (same, with regard to parties' agreement to submit their dispute to arbitration).

On the initial appeal, we noted that "[i]t is well-settled that complete absence of counsel at a critical stage of a criminal proceeding is a *per se* Sixth Amendment violation warranting reversal of a conviction, a sentence, or both, as applicable, without analysis for prejudice or harmless error." *Ross*, 703 F.3d at 873-74 (quoting *Van v. Jones*, 475 F.3d 292, 311-12 (6th Cir. 2007)), and held that a competency hearing is a critical stage, *id*. at 874. We further noted that it was not clear on the record whether Early, acting as standby counsel, provided the constitutionally required "meaningful adversarial testing" leading up to and during Ross's competency hearing. *Id.* at 872 (citing *United States v. Cronic*, 466 U.S. 648, 656-57 (1984)).

Here, satisfaction of the *Cronic* standard "requires evidence, at a minimum, that standby counsel (1) conducted an adequate investigation into Ross's competency, including reading and analyzing Dr. Nixon's report, and preparing for the hearing, and (2) chose not to contest Ross's competency based on his own strategic decision rather than a belief that he simply had no obligation to do so over Ross's instructions." *Ross*, 703 F.3d at 874. The record created on remand supports the district court's conclusion that standby counsel met both requirements.

At the post-remand evidentiary hearing, Early testified that once the government filed its second motion for a competency evaluation, he began preparing for the motion hearing and was exercising independent judgment as an attorney for Ross, though he already had been assigned the role of standby counsel. At the August 5, 2008 hearing to decide the Government's motion to conduct a competency evaluation of Ross, Early stated his view that Ross's erratic behavior

could be due to incompetence, but it could also be a bad-faith effort to create error in the record, and that the court should hold a competency examination to "rule out" the competency issue.

Once the court ordered a competency hearing, Early undertook logistical tasks such as compiling a list of experts acceptable to Ross and submitting them to the court. When it became apparent that the parties could not agree on an expert, the court appointed its own selection, Dr. Nixon. Early testified that he considered himself Ross's counsel with respect to facilitating Dr. Nixon's evaluation of Ross.

Early reviewed Nixon's background and found Nixon to be a "learned" and "experienced" forensic psychiatrist. He submitted various relevant documents to Nixon to assist in the evaluation and discussed the documents over the phone with him. Among others, he provided Nixon with the complaint, indictment, case report, Ross's criminal history, and several of Ross's pro se pleadings. In addition, Early provided pertinent Supreme Court caselaw pertaining to competence to represent oneself to Nixon, including the then-recent opinion in *Indiana v. Edwards*, 554 U.S. 164 (2008). Early explained the details of Ross's case to the doctor, and told Nixon that "it was going to be a fairly extensive trial with a lot of documents" and would be "a major undertaking." Early also advised Nixon that he believed Ross to be competent, testifying that:

> I told him Mr. Ross was very sophisticated in terms of fact analysis, legal analysis, arguments. That he could integrate the facts with the law. That he could look at a witness sheet and pick it apart in terms of what was wrong with the witness and how to attack the witness on cross examination. And that he could interface with counsel. He understood the proceedings. And that this was not a rudimentary type of knowledge that Mr. Ross had. That he had a very sophisticated type of knowledge in terms of dealing with these issues. He was a very sophisticated person.

R. 455, PageID# 5436.

Once Nixon released his report finding Ross to be competent, Early studied it and discussed it with the doctor. Early believed Nixon's evaluation was thorough and complete, and that Nixon had reached the correct result. Early sent a copy of Nixon's report to Ross and discussed it with him twice before the hearing. With Nixon, Ross, and Early all in agreement, Early had nothing to add to the competency hearing aside from expressing his acceptance of Nixon's conclusion.

This record indicates that, though Early was standby counsel, he provided constitutionally adequate representation to Ross leading up to and during the competency hearing by: adequately considering Ross's competency on his own, providing information to aid Nixon in making an informed analysis, analyzing Nixon's completed report, and preparing for the hearing. Further, it is apparent that Early's decision not to contest the report was based on his agreement with it, rather than a belief that he simply had no obligation to do so.

On appeal, Ross argues that Early failed to provide meaningful adversarial testing because he abstained from providing information relevant to the issue of competency at the hearing and "simply relied on Dr. Nixon's report." As a result, according to Ross, "[n]obody actually got up and argued that Mr. Ross was incompetent," and "Early did not provide this court what it required." But Early did not "simply rely" on the report. Rather, he provided Nixon with pertinent documents and his own perspective, which happened to be in accord with Nixon's final report. Early had no duty to argue that Ross was incompetent simply for the sake of playing devil's advocate and airing that perspective in court, given that Early, Nixon, and Ross himself had all independently concluded that Ross was indeed competent.

Ross also argues that Nixon presented the wrong legal standard in his report, but this too is unavailing. Though Nixon's report does not explicitly address *Indiana v. Edwards* in its

discussion of the mental competence standard for waiving counsel, the report directly quotes the

American Psychiatric Association's position—quoted approvingly in *Edwards*—that:

> [d]isorganized thinking, deficits in sustaining attention and concentration, impaired expressive abilities, anxiety, and other common symptoms of severe mental illnesses can impair the defendant's ability to play the significantly expanded role required for self-representation even if he can play the lesser role of represented defendant.

*Edwards*, 554 U.S. at 176. Nixon's report concludes that Ross "is not currently demonstrating

any of the above stated symptoms as outlined by the American Psychiatric Association." This

demonstrates that Nixon was aware of *Edwards*'s discussion of a heightened standard of

competence for defendants seeking to represent themselves at trial, and found that Ross had met

it.

With the benefit of a sufficient record, we now AFFIRM Ross's conviction.