*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PERRY LENELL PIERCE,

        Defendant-Appellant.

UNPUBLISHED
June 04, 2026
11:31 AM

No. 364779
Berrien Circuit Court
LC No. 2022-002061-FH

Before: REDFORD, P.J., and WALLACE and LIEVENSE, JJ.

PER CURIAM.

Defendant appeals as of right from his jury trial convictions of resisting and obstructing a police officer, MCL 750.81d(1), and assaulting a prison employee, MCL 750.197c(1). Defendant challenges the trial court's decision to deny his motion for a new trial. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

### A. DEFENDANT'S CHARGES AND CONVICTION

This case arises from defendant's assault of a prison employee, Deputy Marshall Elder, while incarcerated at the Berrien County Jail on June 20, 2022. At a pretrial status conference on October 10, 2022, defendant informed the trial court that he did not want appointed counsel to represent him and wanted to represent himself. The trial court warned defendant this was a "terrible idea," and defendant affirmed he wanted to represent himself, which the trial court permitted him to do after explaining the risks and ensuring defendant wanted to represent himself. The court also kept defendant's court-appointed lawyer on as standby counsel and advised defendant that his trial would proceed the next week.

That same day, defendant sent a letter to the trial court stating that he was representing himself and that he was requesting all evidence filed against him, all transcripts of court proceedings, and any motions appointed counsel filed on his behalf. Defendant also filed a "motion for dismissal" stating that he represented himself and alleging various procedural

violations that he believed should lead to dismissal of the charges. Even though he was representing himself, defendant explained in his motion why his previously appointed lawyer had been inadequate but did not request new counsel.

The next week, on October 19, 2022, the parties reconvened for a jury trial. The court confirmed with defendant that he wanted to represent himself, and defendant signed a form acknowledging that fact. The prosecution informed defendant of the maximum penalty under each count, which defendant acknowledged. The prosecution asked defendant if he would still like to proceed with self-representation even though he did not have access to a law library. He affirmed that he did. Finally, the trial court told defendant that "if at some point it's just too much for you," defendant could ask that appointed counsel resume representing him during trial.

Defendant then requested an adjournment because he claimed he had not yet seen the video of his assault of Deputy Elder or any other evidence. In response, the trial court played the video for defendant. The trial court denied defendant's request for an adjournment because it had "40 jurors waiting upstairs" and defendant needed to have made the request earlier. Defendant responded by talking about the facts of the assault incident, eventually stating:

> I don't know how I'mma be able to defend myself when I don't have no evidence whatsoever, and . . . I haven't even been given a chance to present my witnesses, because I do have witnesses from my psychiatrist, or I want to present my psychiatrist's file. I haven't had a chance to get that, so that's what I want to put on the record.

Defendant then confirmed that, knowing what he knew, he still wanted to represent himself. Trial commenced with defendant's appointed counsel serving on standby.

Trial testimony and video evidence demonstrated that on the morning of June 20, 2022, defendant's cell door accidentally opened, and defendant exited demanding breakfast. When jail deputies instructed defendant to stay or go back into his cell, defendant refused to do so. Jail deputies had to physically restrain defendant, and, as he was being escorted back to his cell, defendant turned abruptly and "shoulder checked" one of the jail deputies. Defendant cross examined witnesses and argued that he had special permission to be out of his cell, that he was afraid of the jail deputies, and that he was unsure of their intentions when they approached him.

The jury convicted defendant of both counts and the court sentenced him as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 28 to 180 months' imprisonment on each conviction.

## B. POST-CONVICTION PROCEEDINGS

Defendant was appointed appellate counsel and filed a claim of appeal in February 2023. While the appeal was pending, defendant filed a motion for a new trial in the trial court in October 2023. Defendant argued that because the trial judge did not consider his request for new appointed counsel before trial, his waiver of his right to counsel and decision to represent himself were invalid, and that the court did not comply with *People v Anderson*, 398 Mich 361, 367-368; 247 NW2d 857 (1976) or MCR 6.005(D) before granting his self-representation request.

Defendant also argued that the trial court's knowledge of his history of mental illness compounded its error, attaching a psychiatric medical record detailing that on May 30, 2022, about 21 days before the incident, defendant presented to the emergency department at Lakewood Hospital after overdosing on various medications and cutting himself in attempted suicide and had a history of mental illness. Defendant argued evidence of his mental illness history arose at the preliminary hearing that cast doubt on defendant's competency at trial, and accordingly, the trial court should have made a competency determination before allowing defendant to represent himself. Defendant also claimed that the trial court abused its discretion in denying his request for an adjournment of trial.

Meanwhile, in November 2023, defendant was deemed incompetent to stand trial in another case that arose later, and so on January 2, 2024, the trial court entered a stipulated order to adjourn defendant's motion for a new trial until defendant was returned to competence. The trial court subsequently entered a stipulated order in mid-2024 stating that the proceedings on defendant's new trial motion could resume after a June 2024 evaluation determined defendant was competent to proceed.

Defendant later filed a supplemental brief arguing that he had been denied the effective assistance of counsel during pretrial proceedings for the June 2022 assault charges, because the July 2024 evaluation had determined he lacked the substantial capacity to appreciate the nature, quality, and wrongfulness of his conduct and to conform his conduct to the requirements of the law in June 2022. Accordingly, defendant argued that appointed counsel's performance was deficient because he did not adequately investigate defendant's mental health history or raise an insanity defense.

The prosecution responded that the trial court was not given the opportunity to respond to defendant's request for new counsel because defendant, during his colloquy with the trial court, "abruptly pivoted" to a request to represent himself, had not offered any reasons for his request, and had not established the good cause necessary to warrant the appointment of new counsel. The prosecution also asserted that it would have disrupted the judicial process for the trial court to grant defendant's request for new counsel about one week before trial, and that the trial court had substantially complied with the requirements of *Anderson* and MCR 6.005(D) before allowing defendant to represent himself. Finally, the prosecution agreed that the trial court should conduct a *Ginther*[1] hearing to develop a factual record regarding his claims of ineffective assistance of counsel.

Following a two-day *Ginther* hearing before a different judge, the trial court entered a written opinion and order in which it determined that defendant validly waived his right to counsel and that the trial judge had complied with *Anderson* and MCR 6.005(D) before accepting defendant's request to represent himself. The trial court also determined that defendant had not established that his appointed counsel's performance fell below an objective standard of

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

reasonableness. Finally, the court held that the trial judge did not abuse its discretion when it denied defendant's motion for an adjournment on the morning of trial. This appeal followed.

## II. REQUEST FOR NEW COUNSEL AND RIGHT TO SELF-REPRESENTATION

Defendant argues that the trial court improperly denied his motion for a new trial because he was denied the assistance of counsel. Defendant also claims that the trial court did not follow Michigan law before allowing him to represent himself. We disagree.

### A. STANDARD OF REVIEW

This Court reviews the trial court's decision on a motion for new trial for an abuse of discretion. *People v Orlewicz*, 293 Mich App 96, 100; 809 NW2d 194 (2011). The trial court abuses its discretion when it selects an outcome outside of the range of reasonable and principled outcomes. *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017). This Court will not disturb the trial court's decision regarding a request for new counsel absent an abuse of discretion. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). This Court reviews for clear error the trial court's factual determinations surrounding a defendant's waiver of the right to counsel. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). However, to the extent that the trial court's ruling involves "an interpretation of the law or the application of a constitutional standard to uncontested facts," this Court's review is de novo. *Id*.

### B. ANALYSIS

Defendant moved for a new trial under MCR 6.431, which states the trial court "may order a new trial on any ground that would support appellate reversal of the conviction" or if it believes the verdict resulted in a miscarriage of justice. See also MCL 769.26.

### 1. DEFENDANT DID NOT REQUEST SUBSTITUTE COUNSEL

Defendant argues the trial judge did not first adequately explore his request for new counsel before allowing him to represent himself. While an indigent criminal defendant is guaranteed the right to counsel, he is not entitled to have the counsel of his choice appointed simply by requesting the replacement of counsel who was originally appointed. *People v McFall*, 309 Mich App 377, 382; 873 NW22d 112 (2015). A trial court may enter an order allowing for the substitution of counsel " 'only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process.' " *Id*. at 382-383, quoting *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). In *McFall*, 309 Mich App at 383, this Court explained the circumstances under which a defendant may make a showing of good cause:

> Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest. [Citations and quotation marks omitted.]

A defendant's expression of "general unhappiness" with his counsel's representation or mere statements that the defendant lacks confidence in his counsel, without establishing "a

substantial reason," will not suffice to make the requisite showing of good cause. *McFall*, 309 Mich App at 383. If a defendant asserts that his assigned counsel has not provided adequate or diligent representation, the trial court is responsible for hearing the defendant's claim, and if there is a factual dispute, taking further testimony and stating its findings of fact and conclusions of law on the record. *Strickland*, 293 Mich App at 397. However, the trial court's failure to explore the defendant's claim that his appointed counsel should be replaced will not necessarily require that a conviction that follows such an error be set aside. *Ginther*, 390 Mich at 442. Instead, the record must support the defendant's claim that appointed counsel "was in fact inattentive to his responsibilities." *Id*.

Defendant relies on *Strickland*, 239 Mich App at 397 to argue that the trial court erred as a matter of law by not addressing his request for new counsel. But the record does not support defendant's argument because he asked to represent himself, not for a different attorney. At the October 10, 2022 hearing, when discussing a plea offer with the prosecutor, the following exchange occurred:

> *Defendant*: What I'm trying to do is first of all, I want grounds for dismissal because I never went to my arraignment, they never arraigned me, I've never got transcript—
>
> *The Court*. You were arraigned on July 8th, sir, so—
>
> *Defendant*. No. No I wasn't.
>
> *The Court*. —any motions—any—yes, you were. Any motions—
>
> *Defendant*. I want to dismiss my lawyer.
>
> *The Court*. Stop talking. Don't interrupt me or I'll hold you in contempt. Slow down. Any motions have to go through your lawyer, Mr. Mackin. Okay? So work—work with your lawyer if you think—
>
> *Defendant*. I want to dismiss my lawyer.
>
> *The Court*. —you have motions to file. I'm sorry?
>
> *Defendant*. I want to dismiss my lawyer. I don't want him as my lawyer.
>
> *The Court*. You don't get to choose your lawyer when the Public Defender Office represents you. They assign a lawyer, so—
>
> *Defendant*. All right. I want to represent myself. That's why I never went to an arraignment—
>
> *The Court*. You—
>
> *Defendant*. —so I want to represent myself.

-5-

*The Court*. Okay. Let me—let's—let's—let's discuss that for a moment. You do have a constitutional right to represent yourself.

*Defendant*. Yeah, I know.

*The Court*. And if you choose to do that, as bad an idea as I think it is, I can't do anything about it.

This exchange reflects that after three times saying he wanted to "dismiss" his court-appointed attorney, defendant did not say he wanted different counsel, he interrupted the trial judge and stated that he wanted to represent himself. Defendant was unequivocal throughout the record in stating he wanted to represent himself, which the trial court, in considering his motion for a new trial, suggested meant "this was something [d]efendant may have already been contemplating." Defendant subsequently criticized appointed counsel, but he did so while attempting to oppose the trial judge's desire that appointed counsel remain on standby to assist him during trial, when defendant had made it clear he wanted to represent himself. Defendant also complained about appointed counsel in his motion for dismissal, but he did not request another attorney, nor did he do so when they reconvened for trial. Because defendant did not request new appointed counsel, an analysis by the trial court of whether any of the circumstances in *McFall*, 309 Mich App at 383, were present was unnecessary.

Even if the trial court should have engaged in a *McFall* inquiry to determine whether good cause existed (at either the October 10 or October 19 hearing), the trial court, considering defendant's motion for a new trial, reasonably concluded that "[d]efendant waived that when he decided to represent himself." In other words, defendant's choice to represent himself meant he was not deprived of his right to counsel. Also, as articulated in more detail below, the record does not support defendant's contention that appointed counsel was not attentive to his responsibilities to show good cause and it is not clear defendant could have shown that "substitution would not unreasonably disrupt the judicial process."

Similarly, defendant's claim that the trial court erroneously deprived him of counsel and is structural error requiring automatic reversal also lacks merit. Defendant cites *United States v Cronic*, 466 US 648, 658-659; 104 S Ct 2039; 80 L Ed 2d 657 (1984), where the United States Supreme Court listed "the complete denial of counsel" as an example of "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id*. at 658. He also cites *United States v Gonzalez-Lopez*, 548 US 140, 144; 126 S Ct 2557; 165 L Ed 2d 409 (2006), where the Supreme Court recognized that part of the Sixth Amendment right to counsel is "the right of a defendant who does not require appointed counsel to choose who will represent him."

But the record does not support defendant's contention that he was denied the assistance of counsel when the trial judge granted his unwavering request to represent himself and retained his existing counsel as standby counsel. Simply put, the court did not "completely deprive" defendant of counsel, as was the case in *Cronic*. There was no basis for the trial court to inquire into whether appointed counsel was deficient. Similarly, unlike in *Gonzalez-Lopez*, defendant here had court-appointed counsel.

The trial court did not abuse its discretion in finding that defendant failed to request new counsel, instead sought to represent himself, and therefore did not show good cause for the appointment of new counsel.

### B. THE TRIAL JUDGE SUBSTANTIALLY COMPLIED WITH *ANDERSON* AND MCR 6.005(D) BEFORE ALLOWING DEFENDANT TO REPRESENT HIMSELF

A defendant's right to self-representation is protected by the Sixth and Fourteenth Amendments. *King*, 512 Mich at 11. The right of a defendant to self-representation is also found in the Michigan Constitution. *Id*. Before a defendant can waive his right to counsel to exercise his right of self-representation, the Constitution requires that he give a " 'knowing, voluntary, and intelligent' " waiver. *Id*., quoting *Iowa v Tovar*, 541 US 77, 87-88; 124 S Ct 1379; 158 L Ed 2d 209 (2004). In *King*, 512 Mich at 11-12, our Supreme Court explained that a trial court must "substantially comply" with the following three factors set forth in *Anderson*, 398 Mich at 367-368, and MCR 6.005(D), before granting a defendant's request to proceed *in propria persona*:

> (1) the defendant's request to represent themself is unequivocal, (2) the defendant is asserting the right knowingly, intelligently, and voluntarily after being informed of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation "will not disrupt, unduly inconvenience and burden the court and the administration of the court's business."

*King* further explained that, under MCR 6.005(D), the trial court "may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first":

> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

More recently, in *People v Helmer*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 369063); slip op at 6-7, this Court recognized that trial courts are not required to follow a "litany approach" in making these findings. Instead, whether the trial court substantially complied with *Anderson* and MCR 6.005(D) form the "touchstone" for this Court's review. *Id*.; slip op at 7. What allows a reviewing court to determine whether a defendant's waiver of the right to counsel was valid is not the trial court's compliance with suggested, "model inquir[ies]," or the specific advice the trial court gave the defendant, but rather the defendant's understanding as reflected by the dialogue between the trial court and the defendant on the record. *Id*. at ___; slip op at 8.

The trial judge here substantially complied with the requirements of *Anderson* and MCR 6.005(D) before granting defendant's request to proceed *in propria persona*. *King*, 512 Mich at 11. Notably, during the status conference and the first day of trial, defendant's request to represent himself was unequivocal, continuing, and unwavering. The trial court advised defendant, both at the status conference and at the beginning of trial, that self-representation was a "bad . . . idea"

and that "things could end up poorly" for defendant following trial. The trial court also addressed with defendant whether he was familiar with the rules of evidence and procedure, to which defendant responded, "Some of them." On the day of trial, defendant was provided with and signed a written waiver of his right to an attorney and acknowledgement of the dangers of self-representation which read in capital letters: "IN SPITE OF THE WARNINGS I HAVE BEEN GIVEN, I DO NOT WANT TO HIRE A LAWYER OR HAVE ONE APPOINTED FOR ME. I DO NOT WANT STAND-BY COUNSEL. I WANT TO BE MY OWN LAWYER. I HAVE NO DOUBT ABOUT MY DECISION."

The trial judge inquired about defendant's educational background and acknowledged that defendant was well-versed in the English language and was "mentally sound." The prosecution also inquired on the day of trial if defendant wished to proceed with representing himself because he had not had access to a law library between the status conference and trial. Again, defendant responded in the affirmative. The trial judge then informed defendant of the need to comply with the rules of evidence but reminded defendant that prior appointed counsel would serve as standby counsel in the event he changed his mind about representing himself.

The record is clear that the trial court informed defendant both verbally and in writing of the dangers and disadvantages attendant to self-representation, but that defendant nonetheless asserted his right to represent himself in a clear, knowing, intelligent, and voluntary manner. *King*, 512 Mich at 11-12. Additionally, in compliance with MCR 6.005(D), the prosecution apprised defendant of the charges and the maximum prison sentences as a habitual offender. *King*, 512 Mich at 12. Finally, as required by MCR 6.005(D)(2), in making defendant aware that he could call on appointed counsel for assistance, the trial court availed defendant of the opportunity to consult with prior counsel. *Id.* Therefore, in considering the new trial motion, the trial court correctly determined (and did not abuse its discretion in finding) that the self-representation colloquies substantially complied with the *Anderson* factors and MCR 6.005(D).

Citing *United States v Ross*, 703 F3d 856, 867 (CA 6, 2013), defendant contends that since the trial judge was on notice of potential competence issues it should have determined whether he was competent before letting him waive his right to counsel. In *Ross*, the prosecution had filed motions raising potential competency issues, yet even with such indicia relevant to the defendant's mental state, *Ross* concluded that the district court did not clearly err in finding the defendant competent to waive his right to counsel so that he could represent himself. *Id.* at 868

Not only is *Ross* not binding, *People v Abcumby-Blair*, 335 Mich App 210, 231-232; 966 NW2d 437 (2020), it also does not support defendant's position. Here, aside from a few brief references at the preliminary exam and at the outset of trial that defendant was having mental health issues, the record before trial did not indicate that defendant lacked the ability to make a knowing, intelligent and voluntary assertion of his right to self-representation.

Defendant also cites *King*, 512 Mich at 4, to argue that because his waiver of the right to counsel was invalid, the resulting deprivation of his right to counsel means he is entitled to a new trial. But the record clearly shows that the trial court substantially complied with the *Anderson* factors and the factors in MCR 6.005(D) whereas in *King*, 512 Mich at 12, it was "undisputed that [the] defendant's waiver of his right to counsel was invalid . . . ," so defendant's reliance on *King*

is not persuasive. The trial court did not abuse its discretion by denying defendant's motion for a new trial that relied on these arguments.

## III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that his appointed trial counsel was ineffective for failing to investigate his history of mental illness and raise an insanity defense and for failing to notify the trial court of the breakdown of the attorney-client relationship. We disagree.

### A.  STANDARD OF REVIEW

Claims of ineffective assistance of counsel involve mixed questions of fact and law. *People v Urbanski*, 348 Mich App 90, 97; 17 NW3d 430 (2023). This Court reviews the trial court's factual findings for clear error and its legal conclusions de novo. *Id*.

### B.  ANALYSIS

To establish a claim of ineffective assistance of counsel, a defendant must establish that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) the defendant incurred prejudice. *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant suffers prejudice when there is a reasonable probability that, but for trial counsel's errors, the result of the lower court proceedings would have been different. *Randolph*, 502 Mich at 9. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the lower court proceedings. *Id*.

Our Supreme Court has recognized that while a defendant bears the onus of overcoming the presumption that trial counsel's performance resulted from sound trial strategy, a court may not "insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Instead, counsel may only make strategic choices after a thorough and complete investigation, and a strategic choice will be deemed reasonable if reasonable professional judgments support the limitations on that investigation. *Id*. Therefore, counsel still carries an obligation to undertake a reasonable investigation or to make a reasonable determination that renders a particular investigation unnecessary. *Id*. If trial counsel does not exercise reasonable professional judgment when deciding not to pursue a particular investigation relevant to the defense, the decision cannot be said to meet an objective standard of reasonableness. *Id*. at 53. However, we will not interfere with trial counsel's trial strategy with the benefit of hindsight. *People v Traver*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019).

### 1.  INVESTIGATING DEFENDANT'S MENTAL HEALTH AND PURSUING AN INSANITY DEFENSE

A review of the record supports the trial court's conclusion that appointed counsel engaged in an investigation of defendant's mental health history during his representation. Evidence from the *Ginther* hearing revealed that appointed counsel had reviewed past mental health records and prior evaluations of defendant's competency and criminal responsibility for a similar offense of resisting and obstructing a police officer from four months before the incident, and defendant had

been determined to be both competent and criminally responsible. Appointed counsel had reviewed the video of the incident and conceded that while defendant was "not psychologically well" he did not believe defendant lacked the substantial capacity to appreciate the wrongfulness of his conduct. Counsel's interactions with defendant revealed that defendant understood the charges and the judicial process, remembered the incident, and was able to assist in his own defense. And, while counsel and defendant had some angry confrontations, counsel considered defendant to have a "lousy temper" and to be "hotheaded," his reactions were "never disconnected to something we weren't talking about," and counsel did not consider them evidence of competency issues requiring evaluation. Compared with past clients whose behaviors arose from hallucinations or a "disconnect from reality," counsel did not believe that he could argue to a jury that defendant lacked criminal responsibility.

The record reflects that, more than a year later, on November 2, 2023, Lisa Anacker, M.D., determined that defendant was not competent to stand trial in Docket No. 2023-2321-FY in the 64B Division District Court in Montcalm County. Similarly, in June 2024 (about two years after the incident), Dr. Sami Farhat opined that defendant lacked the substantial capacity to appreciate the nature or wrongfulness of his conduct during this incident in June 2022. But for our analysis, appointed counsel in 2022 made the relevant inquiries regarding defendant's history of mental illness, made an assessment based on his interactions with defendant, the findings by Dr. Anacker and Dr. Farhat had not yet been made, and so we cannot find that counsel's performance was deficient. Our Supreme Court has instructed that, when analyzing ineffective-assistance-of-counsel claims, the reviewing court must "consider counsel's performance in light of the facts and circumstances that existed at the time of counsel's conduct." *People v Carson*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166923); slip op at 29.

Also, while it appears appointed counsel did not acquire or review defendant's medical records from Lakewood Hospital, where defendant had been treated after a May 30, 2022 suicide attempt, counsel was aware that defendant had recently been hospitalized after attempting suicide and that defendant was noted to be potentially dangerous while in the Berrien County Jail. We cannot say not getting these records, when counsel had other records, was deficient performance.

It was also clear from appointed counsel's testimony that once appointed counsel investigated the possibility of an insanity defense, his decision not to pursue evaluations based on competency and defendant's capacity was strategic. Specifically, counsel explained that defendant was serving "dead time," for which he was not receiving credit for time served, and there was a significant backlog in having evaluations done. In that context, counsel was concerned about the impact on defendant if the evaluation did not show he was incompetent or lacked the substantial capacity to appreciate the wrongfulness or his conduct or to conform his conduct to the requirements of the law.

Accordingly, the evidence supports the conclusion that appointed counsel adequately investigated and considered defendant's mental state at the time of the incident and afterward, and the record indicates his performance was constitutionally firm.

## 2. BREAKDOWN OF ATTORNEY-CLIENT RELATIONSHIP

Defendant also claims that appointed counsel's performance was deficient because he did not inform the trial court that there had been a breakdown in the attorney-client relationship.

The record confirms that defendant and appointed counsel had a fraught relationship, as mentioned above. But while appointed counsel testified that he did not share with the trial court that the attorney-client relationship had eroded, he also emphasized in his testimony the need to present a "united front" to the trial court. Therefore, appointed counsel's decision to not share their conflict was borne from a reasonable trial strategy, as revealing to the trial court the nature of defendant's behavior may have harmed defendant's defense to charges that he was violent with jail staff. And then, before trial, defendant sought and was permitted to represent himself, appointed counsel became standby counsel, and so at that point it is unclear what purpose it would have served for counsel to disclose their prior conflicts. Accordingly, defendant has not overcome the presumption that appointed counsel's performance in this regard followed sound trial strategy or was otherwise deficient. *Trakhtenberg*, 493 Mich at 52.

Finally, defendant argues that the failure to inform the trial court of the breakdown in the attorney-client relationship, combined with the alleged failure to investigate his mental illness and raise an insanity defense, was cumulative error that entitles him to a new trial. The cumulative effect of several errors may require reversal of a defendant's convictions even if the individual errors would not warrant reversal. *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). For this Court to reverse a defendant's convictions on the basis of cumulative error, "the errors at issue must be of consequence." *Id*. Errors are considered consequential if the effect of the errors is such that it would require a finding that the defendant was deprived of a fair trial. *Id*. Because we conclude that appointed counsel was not ineffective for the two reasons defendant raises, we cannot conclude any cumulative error occurred. Thus, defendant is not entitled to a new trial.[2]

## IV. ADJOURNMENT

Defendant next argues that the trial court abused its discretion in denying his motion for new trial based on the denial of his request for an adjournment of trial. We disagree.

---

[2] Defendant complains that the trial court erred in not allowing certain documents and testimony into evidence at the *Ginther* hearing. Defendant did not include these in his statement of the issues presented and has not presented a well-developed argument in support of his claims, so we deem the issues abandoned. *In re Rippy*, 330 Mich App 350, 362 n 5; 948 NW2d 131 (2019) (observing that an issue not included in the statement of the issues is abandoned); *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) (recognizing that an appellant may not simply announce a position and leave it to this Court to rationalize the basis for his claims or give cursory treatment to an issue with little or no supporting authority).

## A. STANDARD OF REVIEW

The trial court's decision to deny defendant's request for an adjournment is reviewed for an abuse of discretion. *People v Daniels*, 311 Mich App 257, 264-265; 874 NW2d 732 (2015). The trial court abuses its discretion when its decision falls outside of the range of reasonable and principled outcomes. *Id*. at 265. To the extent that defendant claims he was deprived of his constitutional right to present a defense, this Court reviews constitutional issues de novo. *Id*.

## B. ANALYSIS

Before the trial court's discretion to grant an adjournment can be invoked, a defendant is required to show good cause. *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003); MCR 2.503(B)(1). To determine whether good cause was established, the trial court may consider whether the defendant asserted a constitutional right, had a legitimate reason for asserting the constitutional right, had been negligent, and had already requested previous adjournments. *Coy*, 258 Mich App at 18. Even if a defendant makes a showing of good cause, the trial court's decision to deny an adjournment will not be disturbed unless the defendant can also make a showing of prejudice. *Id*. at 18-19.

In the present case, defendant argues that his right to present a defense was undermined by the trial court's failure to grant his request for an adjournment. While defendant has both a state and federal constitutional right to present a defense, "this right is not absolute." *Daniels*, 311 Mich App at 265. A defendant claiming that he was deprived of the ability to present evidence in his defense must show that the evidence was both material and favorable to the defense. *Orlewicz*, 293 Mich App at 101.

Defendant first requested an adjournment on the morning of his trial on the ground that he had not had the opportunity to review the evidence against him. Defendant previously sent a letter to the trial court on October 10, 2022, requesting the evidence, including the police report, video of his jail cell and hallway, transcripts of all court proceedings, and any motions that appointed counsel had filed on his behalf. That same day he filed a motion for dismissal in which he alleged that appointed counsel had not provided defendant with the police report or any other evidence. In neither filing, however, did defendant request an adjournment. And when he did on the day of trial, he said he had not seen the video of the incident, which was less than 10 minutes long, and so the trial court played it for defendant. After defendant watched the video, the trial court informed defendant it would be unable to grant his request for an adjournment because it was the morning of trial and prospective jurors were waiting.

That record, combined with additional evidence from the *Ginther* hearing, shows that the trial court did not err in determining that the trial judge did not abuse its discretion when it denied defendant's request for an adjournment. As an initial matter, defendant could not make a showing of good cause because the record, rather than supporting his claim that he was deprived of the opportunity to review discovery, confirmed that defendant was provided discovery before trial. Counsel testified at the *Ginther* hearing that, among other things, he gave defendant a copy of the police report well before trial and that he would have reviewed the video with defendant but for defendant's aggressive behavior. Thus, any delay in defendant's ability to view the video was because of defendant's conduct and was not good cause. And while an adjournment could have

afforded defendant an opportunity to acquire his "psychiatric file," defendant cross examined witnesses and argued in his defense that he could leave his cell when he wanted as a patient who just returned from Lakewood Hospital, and that he acted out of fear of the deputies.

Moreover, the trial transcript reflects that the video was played several times and defendant was able to question prosecution witnesses about it. For example, defendant asked Deputy Elder why the portion of the incident, during which Deputy Elder stated that defendant was wrestling with deputies, was not shown on the video, and Deputy Elder responded that it was because of the way the camera was pointed. Defendant asked Deputy Elder if the video showed defendant kicking in his cell as deputies had alleged, and Deputy Elder confirmed it did not. Defendant also asked Deputy Elder about the defense theory that defendant had "certain privileges" while housed in the Berrien County Jail.

The video was also played while Deputy Howard testified, with defendant observing that it showed Deputy Hairston walking right past his cell door and none of the deputies were giving defendant commands. Defendant also questioned Deputy Howard about why the video did not show certain portions of the alleged incident. And it was played for Deputy Hairston, with defendant questioning him regarding how the video showed him opening the door to his cell and walking out in a calm manner.

Therefore, rather than supporting defendant's theory that he was deprived of his right to present a complete defense, the transcript shows defendant had ample opportunity to question the prosecution witnesses regarding omissions in the video and factual points in dispute that were favorable to his defense. Because defendant could not make the requisite showing of good cause and he was not deprived of the opportunity to present defenses to the jury, the trial judge did not abuse its discretion in denying defendant's request for an adjournment.

## V. CONCLUSION

We affirm defendant's convictions and the trial court's December 3, 2025, opinion and order denying defendant's motion for a new trial.

/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense

-13-